## DIKES V. MILLER AND NEILL.

Where the Commissioner of the General Land Office, in giving a certified translation of an original title in his office, copied what purported to be a release of the same land by the grantee to the government, which appeared to be annexed to the original grant, including the whole under one certificate, and the Court below ruled that the plaintiff, who claimed by subsequent purchase from the grantee, should read the whole of the document or none, the Supreme Court said, It (the release) was not an instrument which belonged to his (the Commissioner's) official custody; and consequently was not one of which he was authorized to give certified copies, to be used as evidence. It manifestly was not a part of the plaintiff's title, and the fact that it was attached to it by the Commissioner, did not, in our opinion, impose upon the plaintiff the necessity of introducing it in evidence. But if this instrument were properly before the jury, &c.

Where it appeared that the original grantee, under whom the plaintiff claimed, had released to the government by writing, annexed to the original grant, this Court said, It does not appear ever to have been recorded, nor was notice of its existence brought to the plaintiff or his grantor.

*Quere?* Whether a party who had received a headright grant of a quarter of a league in 1831, could relinquish it in 1843, in consideration of having subsequently received from Mexico, a title to one league of land as his headright, without the assent of the government expressed by some legislative act, or some provision of law to that effect.

Appeal from Gonzales. This was an action of trespass to try title. The plaintiff claimed title to the land in controversy, under a grant to one Wickson, made in 1831. The defendants claimed by virtue of a patent issued in 1848.

The plaintiff read in evidence a translated copy, from the General Land Office, of the original grant to Wickson, of one-fourth of a league of land. To this there was attached what purported to be a conveyance or release, by the grantee to the government, of the title to the land granted. This instrument bore date on the 2nd day of June, 1843, and recited, as the consideration on which it was made, that the grantee "has subsequently received from the government of Mexico, a title to one league of land as his head-right." The plaintiff objected to the reading of this instrument in evidence, on the ground

Dikes v. Miller and Neill.

that it was not an archive of the Land Office and not admissible in evidence by virtue of the Commissioner's certificate; and that it was not a part of the plaintiff's title, but was attached to it by the officer without his consent. The Court overruled the objection and required the plaintiff to read the paper in evidence. The defendants subsequently offered the same paper in evidence, to which the plaintiff objected; and the Court sustained the objection, and ruled that the paper was not admissible in evidence, by the defendants. The plaintiff gave in evidence a conveyance from the grantee, Wickson, to one Arrington, bearing date on the 10th day of September, 1844; and a subsequent conveyance from Arrington to himself. The defendants gave in evidence a patent from the State, upon a survey made in 1848; and proved that they claimed the land and put a person in possession as their tenant in 1844; who, however, subsequently purchased from Arrington.

The Court instructed the jury, " That the release of Byrum Wickson, introduced as part of plaintiff's title, divested the said Wickson of all title to the land in question; and his, Wickson's, subsequent transfer of the land, conveyed no title to the plaintiff."

There was a verdict and judgment for the defendants, and the plaintiff appealed.

*J. Hancock*, for appellant.

*A. J. Neill*, for appellees. I. The first and principal objection of the appellant in this case seems to be, that he, the appellant, in the introduction of his testimony before the Court and jury, had to read a certified record from the General Land Office of the State, and because the Court required that the whole of the document would of necessity have to be read, that then he objected because there was more of it than he had contracted for, when he demanded it at the office. This was no fault of the appellees; the plaintiff's title papers were on file before trial as by the statute; and the defendants, and

appellees here, examining them, found the document as certified from the General Land Office and embodied in the statement of facts, as one entire link or chain of the title, as the certificates from the officers of the Land Office clearly show. This paper was made on the 8th April, 1850, and was filed in this cause as evidence of title on the 17th of same month. This was eighteen months prior to the trial. Now how could the appellees know what part of this record, constituting the chief link in the title of appellant, was so objectionable to himself. When examined by appellees, they found it an entire document, because it did not close at the end of the original grant, but continued on as one entire document and all under one certificate from the Land Office. When, therefore, the plaintiff opened his case and commenced reading his title as evidence, he certainly could not be allowed to read a part and then miss a part thereof and pass over to the authentication of the record by the officer; and so the Court ruled, and only thus far, that he must either read it all or withdraw it altogether; and it was a matter immaterial to the defendants. (See Philips v. Green, 5 Mon. R. 344; Bank of South Carolina v. Brown, Dudley, 63.) Where an instrument is proved so as to be read in evidence, everything contained in it is also regarded as proved. (Pressly v. Hunter, 1 Speers, 133. See Art. 1397, U. S. Dig., Supplement, Tit. EVIDENCE, p. 718.)

II. As to the assignment of error on the charge of the Court. Now this ruling must be taken and applied in connection with the facts as they are presented, and not isolated and alone as a dictum of the Judge. The record shows a grant to Wickson. Wickson relinquishes or releases the same to the government and places the same on the very face of his original grant, so that the one can never be used without the other, in June 1843. In the fall of 1844 he executed a quitclaim deed to Arrington for the same land, for one hundred dollars. Arrington even finds a tenant on the land holding for defendants, and then he afterwards quitclaims to Dikes, the present

plaintiff. Now if Wickson has abandoned, released, relinquished or surrendered by any act of his, this land, what was the value of his subsequent sale, and that too a quitclaim on its face, for a nominal consideration, and a tenant holding adversely (corporeal possession.) With these facts all in proof, then read the charge of the Court, and it applies with force.

WHEELER, J. It is objected to the judgment, that the Court erred, 1st, in requiring the plaintiff to read, as a part of his evidence of title, the paper purporting to be a conveyance from Wickson to the government; 2nd, in the instruction to the jury.

The ground on which the Court required the plaintiff to read in evidence the conveyance or release from Wickson to the government, evidently was, that it was brought into Court by him as a part of his title. But in this, we think, the Court erred. There was no evidence of the genuineness of the instrument, nor does it appear how or when it came into the possession of the Commissioner of the General Land Office. It was not an instrument which belonged to his official custody; and consequently was not one of which he was authorized to give certified copies, to be used as evidence. It manifestly was not a part of the plaintiff's title; and the fact that it was attached to it by the Commissioner, did not, in our opinion, impose upon the plaintiff the necessity of introducing it in evidence.

But if this instrument were properly before the jury, as between the parties and under the evidence in the case, it was not entitled to the effect given to it by the instruction of the Court. It does not appear ever to have been recorded, nor was notice of its existence brought to the plaintiff or his grantor, Arrington. Neither was there any evidence that, at the time of his purchase, Arrington had notice of any adverse claim to the land. It was in proof that the defendants placed a tenant in possession, claiming the land, in 1844; but whether before or after the conveyance by Wickson to Arrington, does not appear; and this tenant subsequently acknowledged the right of Arrington, and attorned to him. As pre-

sented by the evidence in the record, it is clear that the plaintiff is to be regarded as an innocent purchaser, not affected by notice of the instrument in question, nor of any adverse claim to the land. In the view we have taken, it is unnecessary to inquire what may have been the effect of the instrument in question, as between the maker and the government, or a subsequent locator; or whether, in the abstract, the charge of the Court was correct, as to its legal effect.

I apprehend, however, it will admit of a serious question, whether a party who has received a grant to land, can relinquish it, and divest himself of the title, in this manner, for the purpose of obtaining another grant or of validating one already obtained, or for any other purpose, without the assent of the government, expressed by some legislative act, or some provision of the law to that effect. But whether the charge of the Court was correct or not, in the abstract, in its application to the evidence, it was, we think, erroneous; and we are therefore of opinion that the judgment be reversed and the cause remanded.

Reversed and remanded.