M. G. DIKES v. ALLSEY S. MILLER AND ANOTHER.

A disclaimer by a defendant, (who had previously pleaded to the merits,) does not release him from costs, theretofore incurred, and damages for the alleged trespass.

A defendant, who has filed a disclaimer, but has not been dismissed from the suit, is not a competent witness for his co-defendant.

It is the fact of interest, and not the opinion of the witness as to his interest, that disqualifies him.

Oral testimony is not admissible, to prove the terms of a tenancy, created by written lease; testimony respecting its contents, when the existence of the lease is disclosed, ought to be excluded.

A patent issued to the defendant, is not evidence that he owned the certificate upon which it issued, or had a title, or color of title to the land, anterior to its date.

Delivery is essential, in order to pass a title by deed of bargain and sale, or release; and an acceptance by the grantee, either express or implied, is necessary to a complete delivery.

A party cannot be made a grantee against his will, but a deed may operate by a presumed assent, until a dissent or disclaimer appears.

*Quære?* Will a deed of relinquishment, by a grantee, to the State, deposited in the General Land Office, be effectual to revest the title of the land in the government, on the ground of a presumed assent? or if not, may it not be effectual, as evidence of an abandonment of the title by the owner, and that it passed to the State, as in the nature of a derelict?

Easements, incorporeal rights annexed to land, incipient titles, as by a location or survey, and equitable titles not perfected into a grant, or vested by a deed, may be lost by abandonment.

It would seem, that there is nothing in principle, to prevent the owner from abandoning his property in land, provided the intention to do so be evidenced by an act or deed, legally sufficient to operate a divestiture of his title.

The grantee in a quit-claim deed, it is said, takes the risk of a title, unless there be fraud.

APPEAL from Gonzales. Tried below before the Hon. Fielding Jones.

This was an action of trespass to try title, commenced on the 13th October, 1849, by M. G. Dikes, the appellant, against Allsey S. Miller and Andrew Neill.

The plaintiff claimed title under a grant of one-fourth of a league of land, made by the commissioner of De Witt's colony, on the 1st day of May, 1831, to Byron Wickson, and conveyed on the 10th of September, 1844, by the said Wickson, by a quit-claim deed, to William W. Arrington, and afterwards by Arrington to the plaintiff; but the said Wickson had, previously to the execution of the deed under which the plaintiff claimed, executed, on the 3d of June, 1843, to "the Republic of Texas," a release of the said fourth of a league of land; reciting as the consideration moving him thereto, that subsequently to the grant of the said fourth of a league of land to him, he had obtained a title from "the government of Mexico for one league of land, as his headright, and the laws of Mexico and the Republic of Texas, entitling him to but one headright, he therefore relinquished," &c., said fourth of a league; and this deed of relinquishment was filed in the General Land Office at the date it was executed by Wickson.

On the 18th of April, 1850, the defendants, Miller and Neill, filed a joint answer, in which they pleaded, 1st, Not guilty: 2d, That the title under which the plaintiff claimed, had been relinquished by the original grantee, Wickson, to the government, and that they were entitled to the land by virtue of a location made upon it on the 25th of June 1843, and a patent issued to the defendant, Miller, by virtue of the said location, and subsequent survey made on the 25th of July, 1848: and 3d, The statute of limitations of three and five years.

On the 27th of April, 1854, and on the 7th of April, 1857, the defendants amended their answer, alleging more fully and clearly, the matters of defence presented in their original answer. On the 27th of October, 1857, the defendant, Neill, filed a disclaimer of all interest, right, title, or claim, in and to the land sued for; but the record did not disclose that any action was taken upon it.

On the trial, the defendants offered in evidence a copy of an application made on the 21st of June, 1843, by William L. Hunter to the surveyor of Gonzales county, for the survey of the

land in controversy for him, by virtue of a bounty warrant issued to Decatur Daniels; also a copy of the field notes of a survey of the said land, made by the said surveyor for the defendant, Allsey S. Miller, as assignee of Decatur Daniels, on the 13th of May, 1848, and a patent for the same issued on the 28th of July, 1848, to the said Miller, as assignee of Daniels.

The defendant, Neill, was offered as a witness, and having stated on his *voire dire*, that he had no interest in the result of the suit, and had filed a disclaimer of all interest in the land, the court permitted him to be examined as a witness, to which the plaintiff excepted.

Neill then testified, that the defendant, Miller, and himself, placed one Dilworth in possession of the land in controversy, in the fall of 1844, as their tenant, and agreed to give him 100 acres of the land, in consideration of his holding possession for them. On cross-examination he stated, that there was a written contract of tenancy between Miller and himself of the one part, and the said Dilworth on the other; whereupon, the plaintiff moved to exclude his testimony as to the tenancy of Dilworth; but the court overruled the motion, and the plaintiff excepted.

The defendants also offered to read in evidence, a copy of the deed of relinquishment by Wickson, to the Republic of Texas, together with proof of its due execution by him; but the court, on the plaintiff's objection, refused to permit them to do so, and they excepted.

There are many other matters presented by the statement of facts, and bills of exception taken by the parties upon the trial of the cause, but as they are not necessary for the proper understanding of the opinion, they are not stated.

There was a verdict and judgment in favor of the defendants; a motion by plaintiff for a new trial was overruled, and he appealed.

*William H. Stewart*, for the appellant.

*J. A. & George W. Paschal*, for the appellees.—The record

does not present the case as it ought to have been presented. The court ruled out the relinquishment of Byron Wickson to the State, because, in the opinion of the judge, this court had held in this same case, (11 Texas Rep. 98,) that the conveyance did not, and could not, pass the land to the State. We do not so understand the opinion, nor the law. The learned judge, who delivered the opinion, evidently intended to waive any opinion on the subject. And the doubt expressed, must have reference to the state of facts. And the court could have intended to say no more, than that the relinquishment could not make void the second title obtained in Robertson's colony, provided the first title was valid.

It could not have been intended to say, that in no case, (nor in this case,) can a person convey to the State his land, so as to divest himself of all right, and to vest that right in the State. The position, that such a conveyance, donation, or dedication, could not be made, without a legislative act, providing for the conveyance, is at variance with an elementary principle. A State is not only a corporation, but a sovereign. It can grant and receive grants, sue and be sued, and perform all other acts which a natural person may do, unless restricted by a constitutional inhibition. There is no necessity of a previous law, authorizing the citizen or a stranger to convey or to devise land to the State, no more than there is a necessity for the previous consent of an individual to receive a grant; the owner may divest himself of all title, without knowing whether it will be accepted or not; the grantee may return it to the grantor, or may convey it to another person; but as such a conveyance by a State requires authority of law, when a citizen conveys to a State, the property passes and remains, until a disposition be made of it by law. (See the McDonogh's Will case, 15 Howard, 367, the concluding pages of the opinion; Vidal v. Girard's Executors, 2 Id. 127.)

"The right to appropriate a derelict, is one of universal law, well known to the civil law, the common law, and to all law; it existed in a state of nature, and is only modified by society,

according to the discretion of each community.   What is the
evidence of an individual having abandoned his rights and pro-
perty ?   It is clear, that the subject is one over which every
community is at liberty to make a rule for itself." (Hawkins
v. Barney's Lessee, 5 Peters, 466, 467.)   The question is one
of derelict; and no certain rules to prove a derelict, can ever
be established.   They are always within the range of legislative
control.   They enter into the whole order of society ; and are
more frequently reached through the force of the statutes of
limitations, than in any other way.   Hence, these statutes are
always held to affect the remedy, and belong to the law of the
forum; although they subvert rights, they proceed upon the no-
tion, that those who have abandoned their rights, shall not be
permitted to resume them ; but the law leaves them in posses-
sion of those who have them, as in case of prescription ; the next
necessitous persons under the colonization system, or the next
locators, since the mere change of remedy, in the case of derelicts.
(Hawkins v. Barney's Lessee, before cited ; Satterlee v. Mat-
thewson, 2 Peters, 380 ; McElmoyle v. Cohen, 13 Id. 327 ; Town-
send v. Jemison, 9 Howard, 413.)   It need not be a necessary
sequence, that the dereliction or abandonment restores the thing
abandoned to the common or public class, subject to ordinary
appropriation ; it is enough that it is a derelict; a thing aban-
doned ; an evidence of an outstanding title.

This principle has its foundation in nature.   It precedes the
law of property, and remains as a principle of all civilized gov-
ernments ; hence, the laws of escheat everywhere.   And hence
the rule, that a conveyance to an alien divests the title of the
grantor, and vests the alien with a derelict for the State, subject
to seizure during his life, and to escheat presently at the death
of the alien.   Thus, indirectly, the citizen does what it is here
contended he cannot do directly. ·

Upon the same principle of voluntary surrender, rests the law
of voluntary dedication, by individual town builders, of streets and
squares, and quays and grave-yards, which go to the public, and
cannot be resumed by the grantors, until the public abandon their

use.   (See San Antonio v. Lewis and Callaghan, 15 Texas Rep. 388.)

WHEELER, C. J.—We are of opinion, that the defendant, Neill, was not a competent witness for his co-defendant.   He had not been dismissed from the suit.   Notwithstanding he had filed a disclaimer, that did not release him from liability for costs theretofore incurred, and damages for the alleged trespass.   He thought himself disinterested; but it is the fact of interest, and not the opinion of the witness, as to his interest, that determines the question of his competency.   (1 Greenl. Ev. § 387.)

If he had been a competent witness, his oral testimony was not admissible to prove the terms of a tenancy, created by a written lease.   We must suppose, that the lease contained the terms and conditions upon which the tenant held the possession; and that was better evidence of its contents, than the recollection of the witness.   When, therefore, he disclosed the existence of the writing, his testimony respecting its contents ought to have been excluded.   The ruling of the court, admitting the witness to testify, and refusing to exclude his testimony respecting the terms of the lease, will require a reversal of the judgment.

There are other questions presented by the record, upon which the decision of the case must ultimately depend, which it is proper to notice.   The statute of limitations of three years, was the defence mainly relied on at the trial, and upon which the case was decided for the defendants.   To make out this defence, it was incumbent on the defendants to prove, by competent evidence, that they held the possession during the prescribed period, under title or color of title.   The patent, issued to the defendant, Miller, as assignee of Daniels, in 1848, was no evidence that the defendants were the owners of the certificate upon which it issued, during the period of their alleged possession anterior to its date, or that previously to its issuance, they had title, or color of title, to the land.   They must have owned the certificate, to render their possession of any avail; and, ordinarily, such ownership

would be susceptible of proof by written evidence, which should have been produced.

A question of more difficulty is, as to the effect of the deed of relinquishment, by the grantee to the government, of the 3d of June, 1843, of the original grant, under which the plaintiff claims. This instrument was excluded by the court, it is supposed, upon the doubt expressed in our opinion, when the case was before us on a former appeal. (Dikes v. Miller and Neill, 11 Texas Rep. 98.) It is now insisted for the appellee, that the ruling was erroneous; but we are referred to no authority in point, upon the question. It is not doubted, that the State has capacity to take. But in order to pass the title by deed of bargain and sale or release, delivery of the deed is essential; and to a complete delivery, an acceptance, either express or implied, on the part of the grantee, is necessary. Has the commissioner of the General Land Office authority to accept a grant or deed of relinquishment on behalf of the State, of lands which have been granted to individuals? No person can be made a grantee against his will; but a deed may operate by a presumed assent, until a dissent or disclaimer appears. When a conveyance is made to any person, his assent to it, it is said, is presumed: 1. Because there is a strong intendment of law, that it is for his benefit to take, and no one can be supposed to be unwilling to do that which is for his advantage: 2. Because it would seem incongruous and absurd, that when a conveyance is completely executed on the part of the grantor, the estate should continue in him: 3. Because it is contrary to the policy of the law to permit the freehold to remain in suspense and uncertainty. (Bouv. Law Dict., tit. Assent, and cases cited.) The deed of relinquishment may, perhaps, be effectual to revest the title in the government, on the ground of a presumed assent. The re-granting of the land, if authorized by the law, would seem to warrant that conclusion.

It will be sufficient for the decision of this case, if, by the act of relinquishment the grantee lost the title, whether it was reacquired by the government, as lands conveyed to the State, or become derelict, or in whatever manner, since the plaintiff can

recover only upon the strength of his own title.  Easements and incorporeal rights annexed to · land, may be lost by abandonment.  So may an incipient right to land, as a location and · survey, or other merely equitable title, not perfected into a grant, or vested by deed.  (4 Kent, Com. 448; 17 Mass. 297; 23 Pick. 216; 5 Serg. & R. 215; 2 Hilliard on Real Property, 3, 12, 13, 79, 98.)

Legal rights, when once vested, must be divested according to law, but equitable rights may be abandoned.  (Picket v. Dowdall, 2 Wash. Va. Rep. 106.)  Yet, if a person having the disposing power absolutely, does an act, sufficient in itself, legally to divest his title, with the express intention of relinquishing and abandoning the property, it is not easy to perceive why he may not do so.  Abandonment is the relinquishment of a right; the giving up of something to which one is entitled.  If the owner· sees proper to abandon his property, and evidences his intention by an act legally sufficient to vest or divest the ownership, why may he not do so in the case of land, as well as of a chattel.  It might go to the government, instead of the first occupant, upon the principle upon which land escheated, or become derelict, belongs to the State.  But I do not perceive, that that would affect the question of power in the owner to abandon the property.

The only instance, I am aware of, in which land has been supposed to be acquired by government by dereliction, is the case of lands left by the sea.  If the sea suddenly retires below the usual water mark, leaving *terra firma*, and making the dereliction sudden and considerable, it belongs to the king.  (2 Bl. Com. 262.)  In the opinion of the Supreme Court, in Hawkins v. Barney's Lessee, 5 Pet. 467, it appears to have been considered that the principle of dereliction may be applicable to the loss and acquisition of title by statutes of limitation.  The court said, "the right to appropriate a derelict, is one of universal law, well known to the civil law, the common law, and to all law; it existed in a state of nature, and is only modified by society, according to the discretion of each community.  What is the evidence of an individual having abandoned his rights of property?  It is

clear that the subject is one over which every community has a right to make a rule for itself; and if the State of Kentucky has established the rule of seven years' negligence to pursue a remedy, there can be but one question made upon the right to do so," &c.

It would seem, that there is nothing in principle, to prevent the owner from abandoning his right of property in land, provided the intention to do so be evidenced by an act or deed legally sufficient to operate a divestiture of his title.

The question of the effect to be given to the deed of relinquishment in this case, we have thought not free from difficulty. No authority in point has been cited by counsel, and our own examination has furnished none. With the lights I have, I incline to the opinion, that the making of the deed of relinquishment, and depositing it, with the original title, in the General Land Office, under the circumstances, was sufficient to divest the title of the grantee, and reinvest it in the government; whether the land became re-annexed to the public domain, or not, is not material to the decision of this case. But as neither examination by counsel, nor our own examination, has furnished us with the principle and authority upon which to rest its decision with entire confidence, and further light may be elicited upon another trial, we forbear to express a final opinion, but leave the question open for further examination. Its decision may be decisive of the case, and we think it proper, therefore, that counsel should have the opportunity of giving it the attention which its novelty and importance would seem to warrant, and which they may do in time to avoid the occasion for another appeal.

If the grantee parted with his title by the deed of relinquishment, it would seem that the plaintiff can have no title by which to maintain the action. He claims under a subsequent conveyance from the grantee, and by quit-claim deeds. And it is said, the grantee in a quit-claim deed, takes the risk of the title, unless there is fraud. (2 Hilliard, Real Prop. 318, n.; Snyder v. Laframboise, 1 Breese, Ill. Rep. 270; Doyle v. Knapp, 3 Scam. 338.) Any expressions in the opinion delivered upon the former

appeal, which may seem variant from this opinion, will be considered, in so far, modified.

We are of opinion that the judgment be reversed and the cause remanded for further proceedings.

Reversed and remanded.