Owen, J.
If Bridenbaugh, the successor in title of McKiggou, was in a position to call in question the deed *412 from the governor, of December 18, 1866, from which King derived whatever legal title he was invested with, the [decree of the district court was erroneous and should be reversed. There can be no question that the deed from the governor to Clarke passed the legal title to the latter, as against all the world, except McKiggon and his successors in title. Johnson v. Townsley, 13 Wall. 72; Shepley v. Cowan, 13 Wall. 92; Knapp v. Thomas, 39 Ohio St. 386, and cases there cited; People v. Livingston, 8 Barb. 253.
To the governor was confided the determination of the facts upon which the deed was issued. It was conclusive as against all collateral attack, and unassailed in the action below except upon the alleged ground of fraud in its procurement. The attack upon it rested upon the fact that its recitals of the death of McKiggon and the conveyance by his sole heir-at-law to Clarke were false. But so far as the record shows, this deed may have been innocently procured, and in the belief of the truth of the recitals. There is no warrant for the assumption that either fraud or perjury in the procurement of this deed can be imputed to Clarke, except that the recitals were shown tó be untrue. Bridenbaugh could assert no higher or better rights or equities than his grantor, McKiggon. He took his place and succeeded to his equities. Each party stood below in a court of equity to invoke its intervention in his behalf. Let us briefly examine these respective equities.
Por more than forty years McKiggon held the evidences of his equities — the certificates of purchase — upon presentation of which, to the proper officer, he was entitled to a deed from the state. Why he did not so obtain his deed is wholly unexplained. In the meantime valuable rights were acquired in the land by payment of taxes for thirty-six years, and by possession and improvement for more than twenty years. Thirteen years prior to King’s purchase the state had in due form executed a deed of conveyance to his grantor. During all this time McKiggon had remained silent, and his silence is utterly unexplained, although he was a witness with good opportunity to be examined and heard.
We need not inquire in this discussion, whether or under *413 what circumstances a party may divest himself of his legal title to lands by protracted absence or dereliction.- It will serve the purposes of this opinion to inquire whether and to what extent the equities of Bridenbaugh (which are the equities of McKiggon) are affected by delay and failure to assert .them.
The principle that a party is to be held to promptness in asserting his equities, as against those innocently acquiring legal interests, is fundamental.
In Smith v. Clay, 3 Brown’s Chan. 640, Lord Camden says : “A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights or acquiesced fora great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced.” This language has been expressly approved by this court in Tuttle v. Wilson, 10 Ohio, 27; Pendleton v. Galloway, 9 Ohio, 180; and Clark v. Potter, 32 Ohio St. 59; Wood, J., in Tuttle v. Wilson, supra, says: “Where rights are unreasonably neglected the presumption is legitimate of an intention to abandon them.”
In the case of Pickett v. Dowdall, 2 Wash. (Va.) 137, it appeared that one Crap, in the year 1741 obtained a warrant from the office of Lord Fairfax, the proprietor, for surveying a certain parcel of land. The survey was made and returned in the same year. No grant was made nor applied for, for over thirty years. In 1762, Lord Fairfax issued a warrant to Pickett who surveyed a tract of land embracing a part of Crap’s survey. A grant was made of this tract to Pickett. Marshall (afterward chief justice), contended as counsel, that Crap must be held to have abandoned his interest. The court so held. The president of the court said: “I think the abandonment of Crap is fully proved. ■ It is true that legal rights once vested must be legally divested, but equitable rights may be lost by dereliction.”
Flemming, J., in the same case says: “I am of opinion *414 that the right of Crap was lost by his neglect, and that Lord Fairfax might legally grant the lands to appellants or any other person.”
Carrington, J., says in same case “The appellant, having forfeited any right which he ever had to the land in question by the most unreasonable negligence, has no ground, upon which to establish an equity that can entitle him to relief.”
This case was approved and followed in Curry v. Burns, 2 Wash. (Va.) 156. It is also cited approvingly in Dikes v. Miller, 24 Texas, 424, Wheeler, J., adding: “ Easements and incorporeal rights annexed- to land, may be lost by abandonment. So may an incipient right to land, as a location and survey, or other merely equitable title not perfected into a grant nor vested by deed.”
In the case of Phillips v. Shaffer, 5 Sergt. & Rawle, 215, the contention was between the plaintiff who claimed under a land warrant for 300 acres of public land, dated August, 1174, — survey made April, 1778, — survey returned 1781, and patent dated Sept. 1782 ; and the defendant tinder a warrant dated 1769 — survey made 1777, —returned, April, 1783.
The defendant’s title would have commenced from the time of survey, 1777, in the absence of special circumstances.
Judgment for plaintiff was affirmed. Tilghman, O. J., says : “An application vests in the applicant a right, though not a perfect right. It is the inception of a title which may be rendered perfect by future proceedings, or it may be voluntarily abandoned by the applicant or lost by his negligence. .„ . . Whether the facts in this ease showed such’ negligence as should deprive the defendant of his advantage of priority of application, was a question which the court was not bound to decide as matter of law. The point might therefore very properly be submitted to the jury.”
Woodward, J., discussing this subject in Grant v. Allison, 43 Penn. 431, says; “ It is a general principle that the holder of an equitable title should always- be prompt and eager to perfect it, and it is ¡reculiarly applicable to a settler. Whilst he remains in possession and keeps his flag flying, the commonwealth indulges his delay in taking a warrant, but *415 when he finds himself out of possession, from whatever causes, delays are dangerous, and if continued for ten years without adequate excuse, fatal.”
McKiggon’s dereliction was protracted for forty-three years, during which he' did nothing to assert his equities or perfect them by demanding a deed. There is an entire absence of facts explaining or excusing his neglect and delay. In the meantime, and for a period of thirty-six years, King and those under whom he claims paid the taxes on the land, and for nearly twenty-one years continuously possessed, and improved it. Thirteen years prior to McKiggon’s conveyance to Eridenbaugh (which -was for a grossly inadequate consideration), the state, in due form, executed a deed to King’s predecessor in title, which deed has since been of record in Hardin county.
King in good faith paid full value for the land. The plaintiff in error, Eridenbaugh, went into court armed only with the equities of McKiggon to assail the title of King, as well the state’s deed of 1866, as the forfeited tax deed of 1847, each of which was prima facie evidence of a perfect legal title. Turney v. Yeoman, 14 Ohio, 207. This the court below found, upon the facts of the case, he could not do. Did the court err?
We are not called upon, as a matter of law, to fix the limit nor prescribe a rule which shall determine the length of time within which the owner of an equitable estate in land shall be held to have abandoned his right by dereliction, or to have waived them by absence or delay. The better rule would seem to be to leave the entire subject to the determination of a jury or the trial court upon the peculiar circumstances of each case.
The court below found King in possession. He was the purchaser in good faith and for full value of the legal title, good against all the world except McKiggon and his successor in title, Eridenbaugh, and good also against the latter, unless he was in a position to assail it.
The court below found, we must suppose, fyom the facts of the case, that McKiggon’s equities ought not to prevail *416 against the legal title of King, and we cannot say the court erred in decreeing to him the relief prayed for.

Judgment affirmed.