## EVANDER HUBBARD V. JAMES B. COX.

### No. 2737.

1. **Deed—Delivery and Acceptance.**—Delivery by the grantor of a deed and acceptance by the grantee are both required to pass title to land; both may be proved by circumstances as well as by direct evidence.

2. **Same—Delivery.**—Actual manual delivery is not necessary, nor is it material that the delivery be by the grantor in person to constitute a good delivery. See facts.

3. **Acknowledgment of Deed.**—Courts elsewhere give to an acknowledgment before an officer of the execution of a deed a conclusive effect. This can not apply to all cases. Every case must depend upon the facts and circumstances attending it and the relations of the parties. We think in all cases there must be an intention to deliver, and there must be acts tending to show an execution of that intention.

4. **Fact Case.**—See facts held sufficient to prove the execution and delivery of a deed.

5. **Witness Disqualified—Transactions with Deceased.**—In an action against an executor by a plaintiff claiming money under a parol gift from the testator, *held,* that the plaintiff could not testify in his own behalf to any statements by or transactions with the deceased touching said parol gift, or to any delivery of the money under it. Rev. Stats., art. 2248.

6. **Fact Case.**—See facts held insufficient to support a finding that the money in controversy had been given to the plaintiff by the testator of the defendant.

APPEAL from Fayette. Tried below before Hon. H. Teichmueller.

November 22, 1888, Cox sued Hubbard, alleging that he was the owner and in possession of forty acres of land described in his petition, to which appellant was asserting a claim which clouded appellee's title to the land and obstructed his free use and enjoyment of the same, and the sale thereof. He also sued to recover a deed to said land made to him by a Mrs. P. W. Davis on the 27th day of June, 1888, and of which appellant had wrongfully deprived him. Finally he sued to recover the sum of $1000 which he alleged appellant had forcibly and unlawfully taken from his possession.

Appellant answered, substantially, that Mrs. P. W. Davis, deceased, was the owner in fee of the land in controversy, and that she was in possestion thereof, occupying the same as her homestead, at the time of her

death. That Mrs. Davis died in September, 1888, at her home on the land in controversy, and left a will, dated August 25, 1888, revoking all other wills theretofore made by her, and disposing of all the property in controversy in this suit, and appointing appellant executor. That said will, on October 22, 1888, was duly admitted to probate in the County Court of Fayette County, that court having jurisdiction thereof, and the appointment therein of appellant as executor was duly confirmed by the decree of said court, and that appellant is now acting in that capacity as such executor. That Mrs. Davis, being the owner thereof, disposed of all the property in controversy by her said will as follows:

The land she devised to appellee for life; remainder after his death to appellant in fee simple. The $1000 in money she bequeathed by general residuary clause to appellant. That appellant makes no claim to said land, and does not hold the same otherwise than he is entitled to do as executor and devisee under said will. That the money belonged to him by virtue of the residuary clause in said will, and he had the right and it was his duty to hold the same as executor of said will.

Appellant further answered that he came into possession of said money by an actual manual delivery thereof to him by Mrs. Davis; that at the time of said delivery thereof said Mrs. Davis made him a present thereof, and that he held said money by virtue of said gift as well as a legatee under and executor of said will.

That at the time of the execution of said will, the testatrix being in possession of the said so-called deed of June 27, 1888, and never having delivered the same to appellee, she handed the same to appellant with instructions to destroy the same, declaring at the time that she did not wish to dispose of her homestead as said instrument purported to do. That appellant took said so-called deed, but did not destroy and still has the same in his possession, ready to produce it in court, but he claimed it to be a testamentary paper revoked by the aforesaid will. That the execution of said so-called deed was procured from Mrs. Davis by the exercise of undue influence over her by appellee, who lived with her in the unlawful and immoral relation of concubinage; that Mrs. Davis was physically and mentally incapacitated at the time she executed said deed, and that the same was wholly without consideration.

Finally, appellant pleaded his executorship, and that said estate owed large debts which had not yet been paid, the twelve months in which creditors had the right to present their claims having not yet expired.

To this answer appellee filed a supplemental petition denying all its allegations and alleging that the consideration for the deed was services rendered by him to Mrs. Davis; that the relatives of deceased nor this defendant, who now seeks to claim said property, ever paid any attention to his aunt's comfort or happiness, never visited her in sickness until he thought she was about to die, and at a time when in fact she was at

the point of death, unable to raise herself in bed, and unable to understand or know what she was doing, and then only for the purpose of attempting to secure her property.

The cause was submitted to the court with a jury, which found that the instrument of June 27, 1888, was a deed upon sufficient consideration and conveyed good title to the land in controversy to appellee, and that appellee was entitled to said instrument itself as his property. The court also found that appellee was the owner of said money, amounting to $1059.35, and rendered judgment for appellee for said sum, and for the land and deed.

To this judgment, as well as to the findings of fact and conclusions of law by the court, appellant excepted and appeals.

*Hume & Kleberg*, for appellant. — A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance, and is so accepted by the grantee. Whether such intent actually existed is a question of fact to be determined by the circumstances of the case. The circumstances and the internal evidences of the case at bar show that the instrument under which appellee claims was not delivered or accepted as a deed of conveyance, and was not intended by either of the parties to operate as such at the time of its execution. Dikes v. Miller, 24 Texas, 423; Tuttle v. Turner, 28 Texas, 773; McLaughlin v. McManigle, 63 Texas, 556; Young v. Gilbeau, 3 Wall., 641; Dan. on Deeds, secs. 262, 285; Kidder v. Stevens, 60 Cal., 414; Ferguson v. Ferguson, 27 Texas, 339.

*Phelps & Lane*, for appellee.—A deed becomes operative when made, acknowledged, and delivered with the intent that it shall become effective as a conveyance, and is so accepted by the grantee. In this case there was a deed properly executed, acknowledged, and delivered, and said deed was based upon a good and valid consideration.

COLLARD, JUDGE. — Both the questions involved in this case are mixed questions of law and fact. Was the deed of Mrs. Davis to Cox delivered by her and accepted by him? And was the money so delivered and accepted?

When these questions are answered in the affirmative or negative, no other points need be considered.

If she had absolutely conveyed the land and the money to Cox she could not afterwards dispose of the same by gift or will. If she had not parted with the title to the land the will must have effect; and if she had not given and delivered him the $1000, but only intended at one time to do so, then her undisputed gift and delivery of it to the defendant Hubbard must be held to be final and conclusive.

Delivery by the grantor and acceptance by the grantee of a deed are both required to pass title to land; both facts may be established by circumstances as well as direct proof. Dikes v. Miller, 24 Texas, 423; Tuttle v. Turner, 28 Texas, 773; Van Hook v. Walton, 28 Texas, 59; McLaughlin v. McManigle, 63 Texas, 553. Actual manual delivery is not necessary, nor is it material that the delivery be by the grantor in person to constitute a good delivery. The form and manner of doing the act is not important so it is the manifest intention of grantor to deliver. Dan. on Deeds, secs. 261, 262, 269.

The facts and circumstances of this case show that it was the intention of Mrs. Davis to convey and deliver the title to the land to Cox. She had frequently expressed her desire that he should have the property, and that her relatives should not. The notary was brought to her house so that she might execute the deed and acknowledge it; when the parties were all present for this purpose she again stated that it was her desire to deed Cox the property for past services he had rendered her; stated the items and had the notary to cast them up, the result of which was put in the deed as its consideration. He had been living with her for many years attending to her affairs, and an illicit intimacy had grown up between them. Under these circumstances the deed was written at her request, signed and duly acknowledged by her, after which, in her presence, it was handed to Cox by the notary. These acts and declarations, in our opinion, tend to evidence a complete delivery. When her property was mentioned afterwards she stated that she had deeded it to Cox. It has been said that "the doctrine seems to be settled that where a party executes and acknowledges a deed, and afterwards, either by acts or words, expresses his will that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate, although the deed remained in the hands of the grantor." Dill. on Deeds, sec. 262. The foregoing extract might not be the law of all cases. Every case must depend upon the facts and circumstances attending it, and the relations of the parties. We think there must be an intention to deliver, and there must be acts tending to show an execution of that intention.

There was evidence supporting the court's finding, that Cox accepted the deed. He in fact received it from the hands of the notary immediately after its execution and acknowledgment, in response to the delivery and intent to deliver by the grantor, and this in her presence. He put the deed away in a box with other papers belonging to him, containing old wills of Mrs. Davis. He claimed the box, locked it, put it away in a wardrobe on the place, which he also locked. The key, it is true, was kept by Mrs. Davis with other keys tied together under her pillow, but the parties lived together in the same house, and the court might well have concluded that under such circumstances the fact that she carried

the keys was not significant, or at least ought not to outweigh other direct proof of delivery and acceptance. His declining to record the deed, and his expressions to that effect before the execution of the deed or afterwards, on the ground, as he stated, that he did not want his children to bother her about the property if he should die first, would not necessarily imply that he did not accept the conveyance of the fee. It most probably meant that he intended she should use and enjoy the property as long as she lived, which would not be inconsistent with his ownership of the title and acceptance of it in good faith.

The next question is, was Mrs. Davis's intention to give the $1000 to Cox finally executed and carried into effect?

The testimony upon this subject, besides that of Cox himself, is that of Baker the notary, and J. C. Brown.

Baker says he was over at Mrs. Davis's house two days after the execution of the deed, when J. C. Brown paid her $1200 on land he had purchased from her. He says: "When Brown paid her the money she said she intended to take this money and use it for what she needed and whatever was left of it she intended to give to Cox." She was very sick at the time and did not expect to live. She and Brown then had some conversation about a will, and she remarked, "I do not see the necessity of making a will as I have already given everything to Cox." Brown told her it would be better, and she finally executed the will.

Brown testified that when he went over to pay her for the land and give his note for the balance, she told him she was going to give the $1200 to Cox. At this time she said she had already made a deed to Cox for the land. Brown advised her to make a will to that effect, as at her death her relations might attack the deed. She then made a will leaving to Cox all her property, real and personal.

Cox's evidence shows that she gave and delivered to him the $1000 as alleged, but the evidence being objected to by defendant was allowed to go in—the trial being before the judge—but the judge who made up the statement of facts (the parties failing to agree), in his certificate thereto, says he did not consider Cox's testimony relating to transactions and conversations with Mrs. Davis. Cox also testified that when she gave him the money he put it in the box with the deed and locked it in the wardrobe. This testimony was also objected to. We are in doubt as to whether the court considered this a transaction with Mrs. Davis. We think no part of it was admissible. The court may have inferred from the fact that Mrs. Davis had expressed her intention to give Cox the money, and the fact as stated by him that he had possession of it, that she had actually given and delivered it to him. We can not tell exactly what evidence of Cox the court did consider. At all events, leaving out such of the evidence of Cox as should have been excluded, we are not satisfied with the conclusion of the learned trial judge as to the delivery

of the money to him. All that the evidence shows was that she intended to give it to him. This intention, as shown by her expressions and the will in his favor, was not to take effect until after her death. In the meantime before she died she gave the money to defendant Hubbard. This final disposition of it revoked her intention to give it to Cox, and must have effect.

We conclude the judgment of the lower court should be affirmed in so far as it adjudged the land to plaintiff, and reversed in so far as it adjudged a recovery of the money by him, and that judgment be rendered in favor of defendant Hubbard for the $1000 sued for, so that plaintiff take nothing by his suit for the money.

*Reversed and rendered.*

Adopted February 18, 1890.