BENAVIDES v. BENAVIDES. (No. 6319.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1920. Rehearing Denied Feb. 18, 1920.)

1. TRIAL ☞396(4)—FINDING AS TO ACCEPTANCE OF DEED NOT SUPPORTED BY EVIDENCE.

In trespass to try title based on delivery of a deed to plaintiff's decedent by his mother, where it appeared that plaintiff's decedent requested his mother to deed him certain property, and the mother before signing the instrument added to the words, "After my death should I not make a will," but refused to acknowledge it, whereupon the son said, "This is no good, Mother; you need not sign it; it is no good without a notary, and without witnesses it is not good," and threw it to the floor, saying, "You have done nothing for me; I do not want it," a finding that the son said that the instrument was "of no present value and conveyed no present title" was not supported by the evidence and could not support a judgment based on the acceptance of such deed by the son.

2. DEEDS ☞208(6) — EVIDENCE INSUFFICIENT TO SUPPORT FINDING THAT DEFENDANT IN POSSESSION OF PROPERTY IN CONTROVERSY ADMITTED THAT IT WAS IN ANY WAY SUBJECT TO DEED CLAIMED BY PLAINTIFF TO CONVEY IT TO HER ANCESTOR.

In trespass to try title based upon claimed delivery and acceptance of a deed to plaintiff's decedent from his mother, evidence *held* not to support a finding that defendant claimed and had possession of the property subject to the legal effect of the deed.

3. DEEDS ☞54, 56(2)—DELIVERY OF DEED AND ALSO INTENT TO CONVEY IS ESSENTIAL.

To operate as a transfer of title to land, there must be a delivery of the deed thereto, and every act in connection therewith fails unless such delivery is made, and the delivery must be made with the intention·that it shall take effect as a conveyance.

4. DEEDS ☞194(2)—PRESUMPTION OF DELIVERY ARISING FROM POSSESSION BY GRANTEE IS REBUTTABLE.

That a deed is found in the possession· of a grantee will raise the presumption that it was delivered to and accepted by him, but such presumption may be rebutted.

5. DEEDS ☞208(6)—EVIDENCE INSUFFICIENT TO SHOW DELIVERY AND ACCEPTANCE.

In trespass to try title based on a deed to plaintiff's decedent from his mother, evidence that before signing the deed decedent's mother added the words, "After my death should I not make a will," but refused to acknowledge it, whereupon decedent said it was worthless and threw it on the floor, and grantor left the room, *held* insufficient to show delivery and acceptance.

6. APPEAL AND ERROR ☞1175(6) — REMAND NOT NECESSARY WHERE FINDINGS OF FACT RELIED UPON ARE INSUFFICIENT TO SUPPORT THE JUDGMENT.

On an appeal in trespass to try title where appellee was satisfied with the findings of fact and no effort was·made to alter, amend, or add to them, and such findings did not support the judgment, the case need not be remanded, but the judgment may be reversed and judgment rendered in the appellate court, since the cause must be considered on those findings which appellee deemed were sufficient to uphold the judgment below.

Appeal from District Court, Webb County; Covey C. Thomas, Judge.

Trespass to try title by Augustina Benavides against Lamar B. Benavides. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and John A. Valls, of Laredo (S. T. Phelps, of Laredo, of counsel), for appellant.

Ira O'Meara, of Laredo, and N. A. Rector, of Austin, for appellee.

FLY, C. J. This is an action in trespass to try title, instituted by appellee, as the executrix of the estate of S. M. Benavides, deceased, against appellant individually and as executrix of the estate of Cristobal Benavides, to recover 3,920 acres of land consisting of seven tracts in Webb county. The cause was tried by the court, without a jury, and judgment rendered in favor of appellee for the land for which she sued.

The evidence showed that appellee is the widow and sole devisee of her husband, Santos Benavides, who died in May, 1913. He was a son of appellant and Cristobal Benavides, who died in September, 1904. The latter left all his property, including the land in controversy, to appellant unincumbered by debts. In 1902, Santos Benavides became the treasurer of the city of Laredo, and before his father died in 1904 had a shortage in his accounts with the city. His father promised to protect him as against the shortage, but died before he had done so, and Santos then urged his mother from time to time to assist him. In May, 1905, appellant was in bad health, and Santos urged her to help him. He had been educated in the law and wrote a deed and urged his mother to sign it, which was to convey to him 3,920 acres of land of the value of $75,000, being the most valuable land appellant owned in her estate of about $250,000 in value. The consideration named in the deed was one dollar and love and affection. The deed was presented by Santos Benavides to appellant at his home in Laredo, and he requested her to sign and acknowledge it. She signed the instrument after adding thereto the words, "After my death should I not make a will," but refused to acknowledge it. The uncontradicted evidence shows that Santos Benavides, when he saw the words written by his mother, said:

" 'This is no good, Mother: You need not sign it; it is no good without a notary, and without witnesses it is not good. * * *' Then he took it and threw it across the room and said: 'You have done nothing for me; I do not want it.' He took it and threw it on the floor."

That was the testimony of appellant and was the only evidence on the subject, no one being present at the time of the transaction except Santos Benavides and appellant. The court, however, found from that evidence that Santos informed his mother that the same was of no present value and conveyed no present title, and that said Lamar B. Benavides then left the room, leaving the paper lying on the floor, but that said Santos M. Benavides kept said instrument carefully in his possession until his death.

[1] The first assignment of error assails the finding that Santos Benavides said that the instrument was "of no present value and conveyed no present title." Undoubtedly there was no testimony to support any such conclusion, but the only evidence on the subject showed that he considered the deed absolutely invalid and said that his mother had done nothing for him and that he did not want it and threw it on the floor. The difference is material as bearing on the questions of delivery and acceptance, for if the deed would be good, in the opinion of Santos Benavides, in the future, then it might indicate an acceptance, though in anger and disappointment he had made a statement of his belief that the deed was invalid and that he did not want it would tend to show a rejection of the deed. The whole case must turn on the question of the delivery and acceptance of the deed, and every little circumstance must be given its full weight in order to arrive at the proper conclusion. Evidently the trial judge concluded that Santos Benavides accepted the deed because he thought it might be of value in the future. It is true that the court had full authority to reject the evidence of appellant, but not to change it so as to support a theory that might be entertained of the case. The court might have rejected the testimony of appellant in toto and have based his decision on the grounds found in the record, or he might have rejected parts of the evidence and accepted the other; but the evidence could not be accepted in a changed and distorted condition.

[2] The second, third, fourth, and fifth assignments of error complain of a conclusion of the trial judge that—

"Ever since the probating of the will of Cristobal Benavides and the qualification of the said Lamar B. Benavides as executrix thereof in 1904, the said Lamar B. Benavides has claimed and had possession of all of said property, subject to the legal effect of said instrument, has rendered the same for taxation each year and paid the taxes thereon each year as they accrued, and has leased said lands and received and enjoyed the rents, revenues, and profits therefrom, and still now has the same so leased."

According to that finding, appellant held possession of the property "subject to the legal effect of said instrument" for several months before it was in existence, and it is probably true that the evidence would justify such a finding as fully as that it was so held after the execution of the instrument. The testimony showed that Santos Benavides was never in possession of the land; that his

mother did not hold it for him; that he at no time asserted any claim to it; that he paid no taxes and collected no rents from the land. The uncontroverted evidence clearly showed that appellant was in exclusive possession of the land and exercised all the rights of ownership over it; that she paid all taxes and mortgaged and leased the property, and collected and appropriated all the rents, revenues, and profits. Santos Benavides at all times stated to his mother that the deed was of no validity, and claimed that he had lost it. He claimed to desire the deed to protect him from his defalcation as a public officer, and yet after the mother paid off the amount of his shortage, and after his death, a claim was set up to the land of appellant. After the death of her husband, appellee did not inventory the land as a part of his estate, nor did she claim any right to it for years after his death, although she was trying to get money from appellant. She stated that her husband told her to claim the lands if appellant did not do her justice. This indicated that he desired appellee to use the deed to extract money from his mother. There is not a word of testimony tending to support the conclusion that appellant held possession of the lands subject to the legal effect of the deed. There was no evidence indicating a real claim to the lands by Santos Benavides; but, on the other hand, all of the facts and circumstances tend to show that Santos Benavides did not claim the land, but admitted the invalidity of the instrument executed by his mother. It was always stated by him to appellant that the deed had been lost or destroyed and was invalid anyway, and it appears that he held the deed merely as a weapon with which to enforce demands made upon appellant for money. He did this while living and instructed the wife to use it for the same purposes after his death.

The only evidence in this case as to the signing and delivery of the instrument consists of the statements of appellant which were credited by the trial court because he found that after the instrument was altered and signed by appellant he "threw said instrument on the floor and informed his mother that the same was of no present value and conveyed no present title, and that the said Lamar B. Benavides then left the room leaving the paper lying on the floor." That finding shows that up to the time that appellant left the room the deed had not been accepted by Santos Benavides, but had been rejected by him in a very emphatic and disrespectful manner. If he afterwards kept the "instrument carefully in his possession until his death," as found by the court, that fact could not make an acceptance of a deed which he had with anger and scant courtesy rejected in the presence of his mother.

[3, 4] To operate as a transfer of title to land, there must be a delivery of the deed, and every act in connection therewith fails unless such delivery is made. Dikes v. Miller, 24 Tex. 417. And the delivery must be made with the intention that it shall take effect as a conveyance, and is usually a question of fact and cannot in most cases be declared as a matter of law. The fact that a deed is found in the possession of a grantee will raise the presumption that it was delivered to and accepted by him, but the presumption, like any other, may be rebutted, and where the land after the date of the deed was assessed to the grantor during his life and he paid the taxes, and the grantor always retained the possession and control of the land as before the deed was executed, it has been held that these circumstances rebutted any presumption of delivery from the deed being found in possession of the grantees. Devlin, Real Estate, § 298, and authority cited.

[5] In this case the evidence of appellant, found to be true by the court, showed that there was no intention to convey the land, and that when the deed was changed by appellant and given to the grantee he angrily grabbed it, said it was worthless, and threw it on the floor, and the grantor left the room. The deed had been undoubtedly rejected by the grantee and was so rejected when appellant left the room, and the rejection was final so far as any attempted delivery at that time was concerned, and no second delivery was found by the court to have been attempted by appellant. Not a fact was found by the court in his conclusions showing an acceptance when the deed was tendered, but rather that it was rejected, and there was no finding that the delivery was a continuing one and that the deed was left with the grantee to be accepted at his pleasure or election. It was tendered and rejected, and no subsequent acceptance did or could take place under the tender of the deed. The act of delivery and acceptance must be mutual and concurrent, and no acceptance at a subsequent time would give validity to the deed, unless there was proof that the grantor had agreed to a subsequent acceptance. This principle of law is well established. Washburn, Real Property, p. 292. The court evidently recognized the principle, for in a conclusion of law he found that at the time it was tendered by appellant it was accepted by Santos Benavides in spite of the violent rejection of the deed by the grantee, the circumstances of which had been found by the court to be true. It becomes unnecessary, therefore, to discuss any subsequent tender or acceptance of the deed, for the court found that, when the grantee condemned the instrument as worthless and took it from his mother and threw it upon the floor, that was an acceptance. There is no finding as to any delivery or

acceptance except that made at the time that the deed was signed by appellant, and, of course, the judgment must rest on that finding. No additional conclusions of fact were suggested by appellee and no objection urged to those found. Appellant requested a number of additional findings of fact and filed objections to the facts found by the court.

Possession of the deed by Santos Benavides raised the presumption that it was duly delivered, but the presumption that a person will accept a deed because it is beneficial to him will never be carried so far as to consider him to have accepted it. Whatever presumption may have been raised of delivery by possession was effectually destroyed by the testimony of appellant, found to be true by the court, accounting for the possession of the deed by Santos Benavides. Tuttle v. Turner, 28 Tex. 759; McLaughlin v. McManigle, 63 Tex. 553.

The court concluded that the deed signed by appellant conveyed "a fee-simple title to all the lands described therein," and yet he found as a fact that when she signed the deed "it was her intention to let said instrument serve to pacify her son, in accordance with the legal effect thereof, until and unless she should thereafter make a will and bequeath the property described therein to her son Santos. M. Benavides." That would indicate that she had no intention to convey the title to Santos. As said by the Supreme Court in Steffian v. National Bank, 69 Tex. 513, 6 S. W. 823:

"To complete a delivery in its legal sense two elements are also essential. The instrument must not only be placed within the control of grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance."

See, also, Hubbard v. Cox, 76 Tex. 239, 13 S. W. 170.

The evidence showed, and the findings of the court indicate, that it was not the intention of appellant that the deed should become operative as a conveyance. She told Santos Benavides that she would not convey the land to him, but would sign the instrument, as altered by her, as a comfort to him. He said, when he rejected the deed, as stated by appellant, that it was not of any account, and that appellant knew it, and she swore that she believed his statement as to the invalidity of the deed and did not intend that it should convey the land. There was clearly no delivery and acceptance of the deed.

There is nothing in this case in favor of the claim of appellee that would appeal to the equitable consideration of a court. Santos Benavides had a shortage in his accounts as a public officer and desired his mother to secure him against prosecution by conveying to him about one-third of her property, although she had nine other children living. He prepared a warranty deed and demanded that it be executed. He became angry when she demurred, and when she acceded in so far as to sign it after being altered by her he rejected it in an insulting and disrespectful manner. Afterwards he conceived the idea of preserving it, and, as confided to his wife, to use it as a club to enforce his demands. He told his mother he had destroyed it, and he died without setting up any claims under the deed, and no claim was made by his surviving spouse to the land until this suit was instituted, about three years after the death of her husband. She admitted that she knew that she owned this very valuable piece of land, but set up no claim to it while endeavoring to induce her mother-in-law to support her and her children. When she failed in that, she then followed the last counsel of her dead husband and used the deed as a bludgeon to get the property from appellant.

[6] Appellee was satisfied with the findings of fact, and no effort to alter, amend, or add to them was made, and, those findings not supporting the judgment, there is no call for remanding the cause. It must be considered on those findings which appellee deemed were sufficient to uphold the judgment of the court. Buster v. Warren, 35 Tex. Civ. App. 644, 80 S. W. 1063.

We conclude that the judgment should be reversed, and judgment here rendered that appellee recover nothing by her suit, that the deed given by appellant be canceled, that she be quieted in her title, and that she recover all costs in this behalf expended.