E. A. LUZENBERG ET AL. V. BEXAR BUILDING AND
LOAN ASSOCIATION.

No. 516.

1. Corporation—Discounting Transaction.—Under an agreement with a loan association, L. made a contract with S. & E. to build a house for him, giving them his notes for the contract price, secured by mechanic's lien on the house and lot. The notes and contract lien were at once assigned to the association, which advanced the money to pay for the house as the work progressed. *Held,* that this was not a discounting transaction within the constitutional provision that no corporate body shall be created with banking or discounting privileges.

2. Allegata and Probata—Immaterial Variance.—Proof of the transfer of notes on October 6th will support an allegation that they were transferred on the third of that month.

3. **Promissory Notes—Default—Election.**—Where a series of notes provide that they shall all become due upon default being made on some of them, the filing of plaintiff's petition in a suit on the series is prima facie evidence of its election to treat them all as due, and it is not necessary to show that plaintiff's board of directors had by resolution elected to so declare them due.

4. **Deed—Recording as Delivery.**—Placing a deed on record raises a presumption that it has been delivered.

5. **Usury—Notes to Building and Loan Association.**—Where notes given for the contract price of a house to be built for the payor, and bearing the highest lawful rate of interest from their date (the date of the contract), are assigned under previous agreement to a loan association which pays the contract price as the work progresses, such notes are not tainted with usury because a portion of the contract price evidenced by them draws interest before it is actually paid out.

6. **Foreclosure of Lien—Writ of Possession.**—A decree directing the sheriff to place the purchaser at a sale made under foreclosure of a lien in possession of the premises, is authorized by article 1340a of the Revised Statutes. Rev. Stat., 1895, art. 1341.

7 **Usury—Attorney Fees.**—In a suit on a note drawing the highest lawful rate of interest, and providing for an additional 10 per cent as attorney fees, it was shown, that under an agreement between the attorney and his client, an undetermined part of such attorney fee would go to the client. *Held*, that this would be usury; but plaintiff having remitted in the appellate court all of the attorney fee, the judgment is affirmed.

APPEAL from Bexar.  Tried below before Hon. W. W. KING.

*C. A. Keller*, for appellant.—1.  A corporation has no power or authority in this State to purchase or discount negotiable paper, and can not maintain suit on such obligations so received.  Const., art. 16, sec. 16; Rev. Stats., art. 566, secs. 17, 28; Endlich on Bldg. Assns., 310, 332; Thomp. on Bldg. Assns., sec. 1, pp. 50, 52; Brice's Ultra Vires, 467; 2 Beach on Priv. Corp., 421, et seq., 438, 439; Taylor on Corp., sec. 297; Boone on Corp., sec. 101, note 2; Anderson v. Assn., 16 S. W. Rep., 298; Sweeney v. Bldg. Assn., 26 S. W. Rep., 290; City Council v. Montgomery, 21 Ala., 76; Chambers v. Faulkner, 65 Ala., 448; Marion v. Denkin, 54 Ala., 471; Martin v. Zillebach, 38 Cal., 300.

2.  The election to declare unmatured notes due and payable, because of the failure to pay prior notes as they fall due, must be proven to have been made.  A corporation can only act by and through its board of directors, or its officers and agents duly authorized by such board.  Rev. Stats., arts. 579, 585, 586, 601; Stock Assn. v. West, 76 Texas, 46.

3.  A recital in a deed that a grantee assumes an existing mortgage on the property conveyed is not the promise of the grantee, and the acceptance of the deed must be alleged to justify a personal decree against the grantee.  Am. Dig., 1892, p. 3615, sec. 173; Boer v. Knewitz, 39 Ill. App., 470.

4.  Usury may consist of charging a legal rate of interest for a longer time than the borrower has the use of the money.  Tyler on Usury,

268; Krouse v. Pope, 78 Texas, 478; Scruggs v. Mortgage Co., 16 S. W. Rep., 563.

5. The court erred in charging the jury to find for the plaintiff, because there was proof tending to sustain the issues of fact raised by the pleadings of said defendants. If the plaintiff had failed to establish any allegation material to its cause of action, or there was any conflict of testimony in relation thereto, or the defendants had introduced any testimony that tended to establish any material allegation in their answer, or there was any conclusion that could have properly been drawn in favor of defendants from the testimony, then the court could not legally instruct the jury to find for the plaintiff. 2 Thomp. on Trials, sec. 2287, p. 1637; Rogers v. Broadnax, 24 Texas, 538, 541, 542; Porter v. Wheat, 53 Texas, 401, 406; Supreme Council, etc., v. Anderson, 61 Texas, 296, 301; Gresham v. Chambers, 80 Texas, 544, 550; Johnson v. Drought (Texas), 22 S. W. Rep., 591, 592.

*William Aubrey*, for appellee.—1. A corporation under the laws of this State may purchase negotiable paper, and may maintain suit for the collection of the same. 1 Dan. Neg. Inst., sec. 768; Tied. Com. Paper, sec. 292, p. 499.

2. The registration of a deed, and subsequent sale of the property thereby conveyed, constitutes conclusive evidence of the acceptance of such deed by and delivery to the vendee therein named. Holmes v Coryell, 58 Texas, 688.

3. To constitute usury, there must be an agreement to pay a greater sum than the legal rate for the use of the money. Rev. Stats., art. 2972; Dan. Neg. Inst., sec. 751; Tyler on Usury, 112, 113, 363, et seq.; Hogg v. Ruff, 1 Black (U. S.), 115; Cutler v. Wright, 22 N. Y., 472.

JAMES, CHIEF JUSTICE.—The following are the uncontradicted facts from the testimony.

1. E. A. Luzenburg and wife and Letitia Egan (afterwards Zanderson) entered into an agreement with Sheperd & Edwards, dated November 3, 1890, acknowledged November 5, 1890, and recorded November 10, 1890, whereby Sheperd & Edwards agreed to erect a frame building upon a lot the homestead of Luzenburg and wife, and gave said Sheperd & Edwards a lien on the premises to secure the consideration for said improvements, $2500, represented by 102 monthly notes, dated November 3, 1890, signed by said Luzenburg and Letitia Egan, all payable to Sheperd & Edwards, each monthly note bearing interest from its maturity at 12 per cent per annum, and providing for an addition of 10 per cent attorney's fee in case of litigation concerning the notes or monthly payments. It was also provided in said agreement, that when any three of said notes or monthly payments become due and were not paid in whole or in part, that then the balance of the notes remaining should, at the election of the holder, become due and payable. Provision was also made in said agreement for insurance by

the owners in favor of Sheperd & Edwards, and for payment of all taxes; and that if Sheperd & Edwards had to pay for insurance or taxes, the amounts thus paid should be added to the original indebtedness and bear interest at above rate, and be secured by the said lien.

2. It does not appear that any portion of the improvements were placed on the premises prior to the written agreement (the answer alleges otherwise), and it appears that the improvements were finished afterwards according to the provisions of said agreement, and accepted by the owners.

3. It appears that when this suit was begun there was default in more than three of said notes, and also that Luzenburg and wife and Letitia Egan had sold the premises to defendant Ashby A. Brown, who had assumed the balance due in said agreement as a part of the consideration.

4. It clearly appears from the testimony of the secretary of the association, and of Luzenburg and wife, that the latter arranged with the association for the means that constructed the improvements, that the association refused to lend money for that purpose, and the course adopted by their arrangement was for the owners to enter into a proper contract with Sheperd & Edwards, contractors and builders, for the erection of the improvements for the sum of $2500, giving a lien, and that the association was to take a transfer from the contractors and furnish the money to erect the improvements under the contract.

5. The contract and notes were so made and assigned and the house built and accepted, plaintiff paying for the same on the estimates of the architect who had made the plans and specifications for Luzenburg, and employed by him.

6. It appears that the contract and notes were dated November 3, 1890, and acknowledged on November 5, 1890, and the assignment to the association of the notes bears date November 6th. The association paid sums at different times on estimates; the first payment, $250, was made November 22, 1890, to Sheperd & Edwards, and the last item on April 8, 1891, to pay off what the evidence states was a mechanic's lien on the property. The uncontradicted evidence shows that the association paid out $2400 on these estimates, and the evidence conflicts as to the association having paid out another hundred. It was shown, that if the association paid out less than $2500 on the improvements, the remainder should be paid to Sheperd & Edwards.

7. As to attorney's fees the evidence is as follows: "He (William Aubrey, the attorney who brought the suit) gets a guarantied salary, and if there is anything in excess as in matters like this, he gets his share of that. He is guarantied so much. The association collects fees and pays him so much of their guaranty, and at the end of the year draw him an extra check for the money due on such matters. If no fees are received during the year, he simply gets the amount guarantied by the association for his services, and no more. He is liable to get more if he recovers this suit."

8. The court on June 5, 1894, directed a verdict for plaintiff, which was done, and judgment was entered for the balance claimed by the petition, including interest and 10 per cent attorney's fees.

*Conclusions of Law.*—The second, fifth, and ninth assignments present substantially the same question, which is, that the purchase of the contract and notes by the association from Sheperd & Edwards was a discounting transaction, and the former could not maintain suit upon them under article 16, section 16, of the Constitution of this State.

In order to dispose of the questions arising from the assignments, we need go no further than to state, that in our opinion the contract and the notes stand as to Luzenburg and Letitia Egan, so far as the lien is concerned, as if the contract had been made directly with the association.

It is clear, from the testimony, that the notes and contract were made with Sheperd & Edwards directly with a view to their passing as a part of the same transaction into the hands of the association from whom the funds were to come to make the improvements. This may have been done from a mistaken idea that it was safer in affording a lien upon the premises than if the contract and notes were made directly to the association. We must look to the real transaction, and it is unmistakable that the intention of the owners of the lot was to contract to pay $2500 in time notes bearing interest to secure these improvements; that the means for making the same were to come from the association, and that a lien should exist on the premises for the contract price. The form in which this was done is immaterial. Lippencott vs. York, 86 Texas, 276.

The association having become the holder of this lien in pursuance of the arrangement entered into, we conclude they are entitled to assert it, and under the circumstances shown it can not be regarded as having acquired the paper by a discounting transaction, and the merits of this question we need not discuss.

The third assignment does not disclose an error. The petition alleged that the notes and contract were transferred on, to wit, the 3rd day of November, 1890. The court properly refused to exclude the notes and contract for variance. The date of the transfer had not been precisely alleged, and it was not a material matter.

It is said in the fourth assignment that the court erred in admitting the notes, because some of the notes were not due by their terms, and no proof was made that plaintiff had ever declared all of said notes due before the suit. It was not necessary for proof to be made that plaintiff's board of directors had by resolution elected to declare all the notes due and payable. The case of Stock Association v. West, 76 Texas, 461, cited by appellants, is not upon this question. The filing of the petition was at least prima facie evidence of such election.

The sixth assignment asserts that there was error in admitting the deed of A. A. Brown, wherein it was recited that Brown assumed the mortgage, for the reason that there was no allegation or proof that the deed had been delivered to Brown or accepted by him. This objection to the deed evidently came from the defendant Brown. The fact that it was placed on record raises the presumption that it was delivered. Holmes v. Coryell, 58 Texas, 688.

The seventh assignment alleges error in admitting in evidence an order from Luzenburg on J. H. McLeary in favor of A. A. Brown, dated May 2, 1892, payable at sight, for $194, because the same was immaterial, irrelevant, and improper, and tended to prejudice the jury against the defendant. This order, in connection with the testimony of Mrs. Luzenburg, seems to have been given to cover what they were in arrears to the association at the time of the sale of the premises to Brown, and would tend to show that the conveyance which was acknowledged on the same day had been accepted by Brown. Upon this view it had some relevancy. If it was immaterial it would not be an error that would reverse the judgment, as the verdict was instructed.

The tenth assignment is, that the contract and notes were merely a device used by plaintiff to evade the law against usury.

What has been said under the second, fifth, and ninth assignments practically disposes of this assignment.

Luzenburg testified: "The association was to furnish the money as soon as we made the contract to put up the building. It assumed the payment on the contract. I can not tell what arrangements were made as to the order in which it was to be paid to the contractors. * * * I contracted with Sheperd & Edwards. I made the arrangements with them to build the house, as it was left with me as to who I should get to build the house, and the money to pay them with was to be borrowed from the building association. * * * The Building and Loan Association requested me to make the notes out to the contractors, and agreed to loan me the money on the notes. I made them out to the contractors, and they were assigned over to the association. * * * They agreed to furnish the money for putting up the building. They agreed with me to take up this paper of Sheperd & Edwards, and that was the way they were to furnish the money. It was in pursuance of this agreement that the notes were executed by me to Sheperd & Edwards, and this contract was made with Sheperd & Edwards by us. I wanted to put up the building, and they agreed to accept the notes on these terms. They said, that if I would put it in shape they would advance the money as the building progressed and take up the notes." There was nothing in the evidence to vary this testimony.

The usury imputed to this transaction is in the fact, that when assignment of the contract bears date (October 6th), the notes had been running two or three days with interest at 12 per cent per annum, and

also in the fact, that the association did not part with the entire sum on the day the notes were given, but paid it out in installments as the work progressed, and thus kept in its possession money upon which it was receiving interest at 12 per cent per annum. There was no usury in the terms of this contract. Upon its face and upon the evidence it was a contract for improvements executed in a manner to bind a homestead, made with contractors whose rights were assigned to plaintiff, the latter and the contractors causing the improvements to be erected, all in pursuance of the original arrangements adopted by the parties. That the lien was created in favor of the association can not be doubted, and that witnesses may have called it a loan is immaterial. Lippencott v. York, supra. The owners contracted for the improvements, not for money. The consideration they agreed to pay for the improvements consisted of the notes bearing what was then a legal rate of interest from their date. The contract did not contemplate that the expense of the improvements should be paid out at the date of the notes. It required the improvements to be constructed on the lot in accordance with its terms, which was done. A finding of usury could not be based upon the simple fact that the notes had been in existence a few days before the assignment was dated, or because the association made payments in respect to the improvements from time to time during the work. The case presented was one totally different from a loan of money, where a borrower gives his notes dated back, or in which money contracted for, with interest, is not received.

Had there been no assignment, it could not be claimed that Sheperd & Edwards had entered into an usurious contract. It appears from uncontradicted evidence, that any profit on the contract was to be paid by the association to Sheperd & Edwards. The latter therefore retained the benefits of the contract. This assignment to the association would not create usury where none existed before. In our judgment, a verdict ascertaining that the transaction was a contrivance to obtain unlawful interest from appellants would not have been allowed to stand.

The fourteenth assignment is, that there is error in the decree in directing the sheriff to place the purchaser at the sale in possession. This is answered by article 1340a, Revised Statutes.

The sixteenth assignment complains of including in the decree 10 per cent attorney's fees. The testimony relative to attorney's fees shows that part only of the 10 per cent, if collected, would, under the attorney's contract of employment, go to him for services. Such provisions are upheld on the principle of indemnity to the holder of the notes against the expense of legal services.

As plaintiff's contract with the attorney required payment of only part of the fee provided for, such contract inures to the benefit of the makers of the notes, and will limit the amount of the recovery on account of attorney's fees. Kennedy v. Richardson, 70 Ind., 528. Any

other view would require us to hold that the association, which is already receiving 12 per cent interest per annum, could by contract secure a still greater sum for the use and detention of its money. If we affirmed the judgment in this particular, we would be aiding the creditor to get, not for services rendered by it or its attorney, but from the bare fact of default, a greater compensation for the detention of its money than is permitted. Barton v. Bank, 122 Ill., 352. As it was shown by the evidence that only a part of the 10 per cent would go to the attorney, without disclosing what part of it, it was error to include in the recovery the entire 10 per cent. Appellee having indicated a willingness to remit such fees in case we should take this view, the error will be remedied by making the deduction. This renders it unnecessary to consider the fifteenth assignment of error.

The final assignment is, that the evidence showed that a part of the work was done before the parties signed and acknowledged the contract.

There is some indefinite evidence that the work was begun in October. In connection with the testimony of Luzenburg on this subject, it appears that the court, upon motion of plaintiff's attorney, directed the jury not to consider the evidence of this witness as to any part of the work done in October. This practically excluded the testimony, and if the case had gone to the jury it would presumably not have been considered. There is no bill of exceptions touching this action of the court, and appellants have not placed themselves in a position to have this evidence considered.

Mrs. Luzenburg testified, that the work began in September or October, but did not know how much was done in these months, nor what proportions of the work was done by November 3, 1890. This fails to show that any material portion of the work was done prior to October 3rd, and was not evidence that was entitled to force, in view of the direct allegation in the answer, that the work was not begun upon said building by Sheperd & Edwards until sometime after said notes and contract were executed.

If there be a conflict in the evidence on any material issue, the case should not have been withdrawn from the jury. We think the evidence clearly shows that the lien was created on the premises by the contract and could be asserted by plaintiff for the contract price, and that it is shown by defendants' pleading that the work was done after the contract was entered into, and that a verdict against plaintiff would not have been allowed to stand. The amount of the attorney's fees will be deducted, and as thus reformed the judgment will be affirmed.

*Reformed and affirmed.*

Delivered December 19, 1894.

Writ of error refused.