BELGARDE et al. v. CARTER et al.†

(Court of Civil Appeals of Texas. San Antonio. March 20, 1912. On Motion for Rehearing, May 1, 1912.)

1. WILLS (§ 114*)—ATTESTATION—NECESSITY.

The steps prescribed by the statute to be taken in executing a will must be shown to have concurred before an instrument of testamentary character will be recognized as a valid will; and an instrument, which is in form a will, is inoperative and void as such, where not attested by two or more credible witnesses.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 277–279; Dec. Dig. § 114.*]

2. WILLS (§ 88*) — CONSTRUCTION — ANIMUS TESTANDI—"DEED."

The test whether a writing is a will or deed is the animus testandi, and, where the maker of an instrument intends a disposition which is in legal effect testamentary, the writing made will be held a will; but if he merely intends to convey a present estate or interest the instrument is a "deed."

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*

For other definitions, see Words and Phrases, vol. 2, pp. 1919–1924; vol. 8, pp. 7630; 7461–7468.]

3. WILLS (§ 88*)—CONSTRUCTION—INTENTION TO DEVISE.

Where a person on his deathbed sent for a justice of the peace to prepare an instrument disposing of all his property, an instrument prepared by such scrivener, which was in form and substance a will, stating that it is "my last will," etc., and mentioning no consideration, expresses an intention to devise rather than to convey, and must be held a will rather than a deed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

4. WILLS (§ 88*)—CONSTRUCTION—INTENTION OF TESTATOR—LANGUAGE USED.

The language used in an instrument is not controlling in determining whether it is to be construed as a will or as a deed; but it may be considered, with other circumstances, to determine the intention of the maker.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

5. WILLS (§ 88*)—CONSTRUCTION—INTENTION OF TESTATOR.

While, under Rev. St. 1895, art. 632, which provides that an estate of freehold or inheritance may be made to commence in futuro by deed or conveyance, "in like manner as by will," the fact that an instrument provided that the disposition of the property should take place after the death of the testator is not controlling in determining whether it was a will or a deed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

6. DEEDS (§§ 208, 58*)—WILLS (§ 88*)—EXECUTION—DELIVERY.

While registration of a deed is prima facie evidence of a delivery to the grantee, and will usually be held to be equivalent thereto, delivery to an officer who took the acknowledgment of it, with instructions to deliver it to the gran-

tee or have it recorded, is a good delivery to the grantee; but where an instrument in the form of a will was not acknowledged or attested by any witnesses, it could not be recorded, and a delivery to the scrivener who wrote it, with instructions to have it recorded, would not make it valid as a deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632, 634, 130–135; Dec. Dig. §§ 208, 58;* Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

7. WILLS (§ 88*)—NATURE AND ESSENTIALS.

That an instrument in the form of a will, and intended to be a will, was invalid as such for a failure to have it attested by two credible witnesses would not of itself transform it into a deed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

Appeal from District Court, Wilson County; E. A. Stevens, Judge.

Trespass to try title by C. A. Belgarde and others against Marsh Carter and others. From a judgment on an instructed verdict for defendants, plaintiffs appeal. Affirmed.

Jas. A. King, B. F. Ballard, and J. E. Canfield, all of Floresville, for appellants. O. A. McCracken, C. A. Cone, and T. P. Morris, all of Floresville, for appellees.

FLY, J. This is an action of trespass to try title, instituted by Fannie Arnold and Henry Arnold, her husband, Maisie Duglosch and husband, John Duglosch, Eva Wiley, Elizabeth Belgarde, joined by her husband, C. A. Belgarde, John Wiley, James Wiley, Louis Wiley, Martha Galloway and her husband, William Galloway, Henry Wiley, and Allen Wiley against Charles Criss, Hyman Stroud, and Marsh Carter to recover two tracts of land in Wilson county. The court instructed a verdict for appellees.

The decision in this case turns upon the construction of the following instrument, appellants contending that it is a deed, and appellees that it was intended to be a will: "State of Texas, County of Wilson. I, Louis Wiley, being of sound mind make this my last will: I give devise and bequeath my estate and property real and personal as follows that is to say, I give devise and bequeath unto Margaret Jane Wiley my wife one hundred and thirty-eight and one-half acres of land more or less being my homestead, now occupied by myself and wife Margaret Jane Wiley, I give devise and bequeath to George W. Wiley & Clestice Ann Wiley wife of George W. Wiley and the heirs of their bodies, one hundred acres of land, being Lot No. (16) of the Conception Losoya League & Labor in Wilson County, Texas. I give, devise and bequeath, unto my wife Margaret Jane Wiley and George Wiley, one hundred acres of land, to be equally owned and controled between them, and not to be sold or disposed of by either of them, the said Margaret Jane Wiley, my wife, and George W. Wiley, and it is my will that upon the demise of either the said Margaret

Jane Wiley or George W. Wiley, that the surviveer remain in full possession of the said one hundred acres of land more or less. I give devise and bequeath unto my wife Margaret Jane Wiley all of my cattle and horses, to be owned and controled by her, as she may deem proper, and at her death it is my will that the said cattle and horses, be equally divided between my brothers and sisters. I give devise and bequeath unto my mother Nañcy Wiley the sum of Fifteen Dollars $15.-00 per annum to wit to be paid on the first day of November in each year so long as she may live said amount to be paid by my wife Margaret Jane Wiley and George W. Wiley, and it is my will that at my death that the above named parties Margaret Jane Wiley, my wife, and George W. Wiley above named enter into and take possession of the property both real and personal, without further notice. In witness whereof I have signed and sealed and published and declared this instrument as my will at my home this 23d day of July, A. D. 1890. [Signed] L. A. Wiley."

The instrument was not attested by witnesses, nor acknowledged, and was not in the handwriting of the maker, and, of course, had neither been recorded nor probated. It was executed while Louis A. Wiley was lying on his deathbed, about eight days before his death; and it was shown that he sent for Magee, a justice of the peace, to prepare the instrument, which Magee thought was a will. T. P. Morris swore that Magee went to write a will, and when he came back told Morris that he had written a will. Magee carried the instrument off with him after the maker signed it, and three or four weeks afterwards gave it to the widow of the maker. She kept it three or four months, when the following was written on the back of the envelope in which was the instrument, and it was deposited in the county clerk's office: "We agree that this envelope with its contents is to remain in the county clerk's office of Wilson county untill we both call in person or to be delivered to either of us after the death of the other. December 22, 1890. Will of L. A. Wiley. G. W. Wiley. Margaret J. Wiley."

Mrs. Maggie Johnson, the former widow of Louis A. Wiley, who signed the foregoing agreement as Margaret J. Wiley, stated that the agreement was made because George Wiley said "it might be worth something to him if I died before I made away with it." After the death of George Wiley, which occurred in 1903 or 1904, Mrs. Johnson took possession of the instrument. She swore that when the instrument was executed she was in the room, and that her husband told the justice of the peace to keep it a while; and he put it in his pocket and walked out. Mrs. Johnson sold all the land to the appellees herein. She had been in possession of the property since her husband's death, using it and exercising rights of ownership over it.

The witness Frank Wiley testified that at the time the instrument was being prepared he was requested to leave the room; but he went outside and stood by the window, with one Bob Hays, for half an hour, and watched what was going on in the room. He testified that he saw his brother, Louis, sign the instrument, and from his point of vantage outside of the house heard Magee read it to his brother, and heard his brother, who was dying of lung consumption, and who, according to the witness, died a few hours afterward, tell Magee to "bring it right over here to the county seat and hand it to the county clerk to be filed," and afterwards the witness added, "to be recorded." Robert Hays corroborated that statement. Magee, the justice of the peace, was dead. This suit was filed November 11, 1910.

The evidence shows, without controversy, that the justice of the peace was sent for to write a will; that he thought he had written a will, and the form of the instrument is that of a will. The evidence tends to show that the maker of the instrument intended to make a will, because he sent for the officer for that purpose. No acknowledgment was taken, and the instrument was not attested by two or more witnesses. It is the contention of appellants that, because there were no witnesses to the instrument, and because the scrivener was told to leave it with the county clerk for record, and because, four or five months after the death of the maker of the instrument, his brother and widow agreed to deposit the instrument in the county clerk's office, and that it should be taken out only under certain conditions, the instrument was a deed, and not a will, and being a deed it conveyed the land in controversy to George Wiley. The court excluded the instrument from the jury, evidently concluding that it was intended as a will, and, not being prepared as required by statute, it was an invalid will, and in no manner affected the property, and on the death of the maker it became the property of the surviving widow.

[1] The instrument is in form a will; but it is not attested by two or more credible witnesses, and, as it could never have been probated, it was, if intended for a will, inoperative and void. "The constituent facts necessary to the due execution of a will are specifically prescribed in the statute. And these must be shown to have concurred, before an instrument purporting to be of a testamentary character can be recognized as a valid will." Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619; Brundige v. Rutherford, 57 Tex. 26; Ochoa v. Miller, 59 Tex. 460; Moursund v. Priess, 84 Tex. 554, 19 S. W. 775.

[2] The true test as to whether a writing is a will is the animus testandi; and it

can be laid down as a safe rule that, if the maker intended a disposition which was in legal effect testamentary, it will be held to be testamentary. If the intention be to convey a present estate or interest upon the execution of the instrument, the instrument is a deed; and in the estate or interest meant may be included that in which the use and occupation, rents and profits, are reserved by the maker to himself. The rule is thus stated in the Missouri case of Aldridge v. Aldridge, 202 Mo. 565, 101 S. W. 42: "The test question in this case is: Did the instrument in question, at the instant of its delivery, carry to the wife of the grantor an estate for life and to the son named the remainder in fee, subject only to be defeated by a reversion on the happening of the contingency named? If yea, it was a deed; and the plaintiffs cannot recover. If, on the other hand, it was a mere gift, to take effect only on the death of the testator, then it was ineffectual for that purpose, because not executed in the manner prescribed by law for the execution of a will. * * * To answer the test question before us, we must go to the instrument itself and find what was the true intent and meaning of the maker. The cardinal rule of interpretation of a deed is, in one respect at least, the same as that of the interpretation of a will; that is, the true intent and purpose of the maker, as that intent may be discerned from the instrument itself, taking it all altogether, considering every part of it, and viewing it in the light of the circumstances surrounding the maker at the time of its execution." In the Missouri case, the instrument was in form a deed; but it provided that if the maker outlived his wife the land should revert to him, and if she outlived him she was to have the land for her lifetime for her use and support, then to go to their son. The circumstances surrounding the execution of the instrument were: The maker was an old man, the father of several children; it was executed about a month before the death of the maker, and disposed of all of his property. The transaction was a gift; the only consideration being love and affection.

[3] In this case, Louis A. Wiley was on his deathbed and sent for a justice of the peace to prepare an instrument disposing of all of his property. The scrivener sat by his bed and prepared what the dying man wanted, which was in form and substance a will. It states that it is "my last will," and it devised and bequeathed the property; and it is further stated, "it is my will that at my death that the above named parties, Margaret Jane Wiley, my wife, and George W. Wiley, above named, enter into and take possession of the property, both real and personal, without further notice." No consideration is mentioned. He made a gift, a bequest. He declares in the last part of the instrument that he had "signed and sealed and published and declared" the instrument as his will. If the words of a testator mean anything, if they are to have any force whatever given to them, if they cannot be distorted into meaning something that the words are never used to convey, and if language ever expresses intention, the instrument was intended to be a will. Can its whole tenor and effect be destroyed and the instrument be transformed into another and totally different instrument by proof of a failure to have attesting witnesses and a request by the testator to have it recorded? Or can an agreement by parties five months after the death of the maker of the instrument reflect his intention in making it, and change it from a will into a deed? We think not.

[4, 5] We understand that the language used in the instrument is not controlling, but it is considered with other circumstances to determine the intention of the testator; and neither can the character of the instrument be determined alone by the fact that the estate is made to commence in futuro, for it is provided in article 632, Revised Statutes, that "an estate of freehold or inheritance may be made to commence in futuro by deed or conveyance, in like manner as by will." But when made by a person on his deathbed, when disposition of the entire property of the maker is attempted, when the instrument is in form a will, and the disposition of the property is to take place after death, the instrument must be declared a will. If those circumstances do not constitute an instrument a will, no man can be certain of making testamentary disposition of his property.

[6] To operate as an effectual transfer of title, it is necessary that the deed should be delivered; and it is the contention in this case that the delivery of the instrument by the maker to Magee, with a request to file it for record, was a delivery to the beneficiaries in the instrument. It has been held that if a grantor delivers the deed to an officer who took the acknowledgment, with instructions to deliver it to the grantee at any time he may call for it, or if the notary public who takes the acknowledgment is authorized to have it recorded, but forgets it, the delivery is complete. Devlin on Deeds, § 274. It has been held in this state that when a deed, which is properly acknowledged and certified, is deposited with the proper officer to be recorded, it is a constructive delivery of the deed to the grantee. Newton v. Emerson, 66 Tex. 142, 18 S. W. 348; McCartney v. McCartney, 53 S. W. 388. The registration of a deed places it beyond recall upon the part of a grantor; and such act will usually be held to be equivalent to delivery to the grantee. But, if the instrument is not acknowledged or proven up by witnesses, it cannot be recorded; and a delivery to the registrar would amount to nothing. It could

not be recorded; and the grantor at any time might reclaim and destroy it. The delivery to the officer who might have taken an acknowledgment, but did not, was no more than a delivery to any other person, not the grantee. The officer was not told to take the acknowledgment, was not told to deliver it to the grantees, but to place it with the county clerk for record, when he must have known, if it was a deed, it could not be recorded. While we are treating the testimony as true that the maker of the instrument requested Magee to have it recorded, the wife contradicted that statement; and it is borne out by the fact that Magee did not leave the instrument in the clerk's office.

Registration of a deed is prima facie evidence of a delivery; but it is held that the presumption of delivery arising from registration may be rebutted. Holmes v. Coryell, 58 Tex. 680; Luzenberg v. Loan Ass'n, 9 Tex. Civ. App. 261, 29 S. W. 237; Maynard v. Maynard, 10 Mass. 456, 6 Am. Dec. 146. While registration raises the presumption of delivery, it has never been held, so far, as we know, that the delivery of an unacknowledged instrument to the scrivener, with instructions to file it in the clerk's office for registration, was a delivery. It is true that the justice of the peace, the scrivener in this instance, might have taken the acknowledgment of the maker, but he did not; and the evidence does not indicate that his aid as a notary public was sought or obtained. He was sent for to write a will, and he wrote what he thought was a will, and which in form was one. Epperson v. Mills, 19 Tex. 65; Ferguson v. Ferguson, 27 Tex. 344; Carlton v. Cameron, 54 Tex. 72, 38 Am. Rep. 620; De Bajligethy v. Johnson, 23 Tex. Civ. App. 272, 56 S. W. 95.

The instrument being in form a will, the justice of the peace having been sent for to write a will, and, after writing it, declaring it a will, not being acknowledged as a deed, nor having any characteristic whatever of a deed, no authority has been cited by appellants, nor discovered by this court, that holds that a mere direction to have it recorded would change it into a deed. If the instrument could have been registered, but was never registered, no presumption would arise that it was intended to be a deed, because the presumption arises from the fact of registration. The instrument, however, could not be registered; and this court is called upon by appellants to hold that an unacknowledged instrument, in form a will, delivered to a scrivener with the request to leave it in the clerk's office for record, was a delivery to George Wiley, although it never passed out of the hands of the scrivener until after the death of the maker, and then was delivered to the surviving wife. We do not believe that an instrument which all the attending circumstances, as well as its form, show to be a will can have its whole nature and effect altered by a request to have it recorded. That would be to destroy every test as to whether an instrument is a deed or a will, except a request, or not, by the maker for registration of the instrument. The request to register is the sole fact in this case that can be urged with any degree of reason to indicate that the instrument was a deed, unless the failure to have the attesting witnesses is another.

[7] The fact that the instrument was invalid as a will did not transform it into a deed. As said in Poore v. Poore, 55 Kan. 687, 41 Pac. 973, in which an instrument, in form a will, was delivered to the devisee by the makers of the instrument: "We find no difficulty in reaching the conclusion that it passed no interest to the plaintiff on delivery to him. It is named a will, and in terms gives no estate during the life of the makers, but expressly provides that he shall have that, and that only, of which they might die possessed. Neither can there be any doubt that this instrument is void as a will. Section 2 of the act relating to wills expressly requires that every will shall be attested and subscribed, in the presence of the party making the same, by two or more competent witnesses. This was not done. The paper was not a will, could not be probated as such, and could not and did not confer any rights on the plaintiff."

All of the evidence tending to show that the instrument, executed by Louis A. Wiley, was intended to be a will, the court did not err in instructing a verdict for appellees. It would not matter that George Wiley, as contended by appellants, may have performed great service for Louis A. Wiley, although the testimony fails to show it, and that the wishes of the maker of the instrument have been thwarted; that is usually the case when wills are not executed as required by law. Because the justice of the peace and the maker of the instrument did not know that two or more witnesses should have attested the will, in order to render it valid and effective, cannot form a reason to transform the instrument into a deed.

The judgment is affirmed.

### On Motion for Rehearing.

That the instrument was in form a will cannot be reasonably denied; and, as hereinbefore stated, there is not a single circumstance tending to show that a deed was intended. By the very terms of the instrument it was not to become effective until after the death of the maker of it; for it states, "it is my will that at my death the above named parties, Margaret Jane Wiley, my wife, and George W. Wiley, above named, enter into and take possession of the property, both real and personal, without further notice." If it had been intended as a deed such language was uncalled for and without reason.

It is contended that this court should

presume that the maker of the instrument and the justice of the peace, and ex officio notary public, knew how to execute a will; and this court has so presumed when it has declared an instrument a will, which has, in its form, every earmark of a will. Certainly, if a notary public or a justice of the peace would know so much about executing wills, he ought to know something about drawing a deed, a form of instrument with which he is brought into more frequent contact. And yet when, as contended by appellants, he was asked to draw a deed he wrote an instrument, in form a will, denominated it a will, and failed to take any acknowledgment to it, although that was the chief duty incumbent on him as a notary public. He "might have taken an acknowledgment," as claimed by appellants, but the fact remains that he did not; and, if he was sent for as a notary public, he seemed to have forgotten it, and totally failed to perform the main duty incumbent on him as a notary public. He was not called upon, however, to act in the capacity of a notary public; and no effort was made to show that he was requested to take an acknowledgment of the instrument. A delivery of the will to the county clerk or to George Wiley could not have changed its character and made it a deed.

The question which Frank Wiley said testator asked the justice of the peace indicated that he deemed the instrument of much more importance than a mere deed, which almost any one can write; and the reply, that "it would stand the test in any court in Texas," tends to indicate that he was speaking about a will, and not a deed.

There is not a particle of evidence tending to show that the justice of the peace was sent for to write a deed; but the only testimony on the character of the instrument to be written, and which was written, was that of T. P. Morris, who swore that Magee "brought the will back with him; that is what he claimed it was, and that is what the squire went out there to do; and that is what the squire came back and said he had written, and the duty he had performed for Louis Wiley." On the cross-examination, speaking of Magee, he stated: "Old Squire Magee, I suppose, was like any other justice of the peace; he was not skillful, but he understood a will from a deed." The witness stated that the will was a copy of a form in Sayles' Justice Guide, of which Magee had a copy. There is no basis for the contention that the justice of the peace was sent for to write a deed, and was so ignorant that he used the form for a will by which to write it.

If Frank Wiley swore the truth when he stated that the testator requested Magee to place the instrument in the county clerk's office, it has no probative force whatever as to the character of the instrument. He merely wanted the instrument to be filed in the county clerk's office, not to be recorded, because he must have known that he had not acknowledged it, and that it could not be recorded. He wanted it in a safe place. If he had told the justice of the peace to have it recorded, that would not have completely altered a will, so as to make it a deed.

The motion for rehearing is overruled.