## CITY OF SAN ANTONIO et al. v. SAN ANTONIO ACADEMY. (No. 7109.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1924. Rehearing Denied March 19, 1924.)

1. Dedication ⏄⏄17—Dedication evidenced by deed held an express dedication.

Where dedication of land to street purposes was evidenced by a deed duly executed, there was an express dedication.

2. Dedication ⏄⏄37—Land dedicated to street purposes upon acceptance became public street.

Where the only condition attached to a dedication of land was that it was to be used for the purposes of a public street, upon the city's acceptance the land became a street, notwithstanding it was not used for many years, as the deed guarded against misuser and not nonuser.

3. Dedication ⏄⏄37—When express dedication may become effective without immediate use.

An express dedication may become effective without immediate use, if it is an unequivocal grant of land for a public highway.

4. Deeds ⏄⏄194(5)—Registration of deed is prima facie evidence of delivery and acceptance.

The registration of a deed is prima facie evidence of its delivery and acceptance; it being presumed, subject to rebuttal, that the vendee recorded the instrument.

---

**5. Dedication** ⬤⇒29—Dedication became irrevocable upon acceptance before revocation of dedication by original owner.

If the acceptance by the city of a dedication of land for street purposes was not made within a reasonable time, no one could take advantage of that fact except the person who had executed the deed of dedication, and where the latter did not revoke the dedication before an acceptance of it by defendant municipality, the dedication became irrevocable.

**6. Dedication** ⬤⇒38—Status of parties became fixed when suit was instituted.

In a suit to restrain a municipality from opening a street on land, which it claimed the right to do under an acceptance of a dedication by original owner of the land to street purposes, status of parties *held* fixed at institution of suit, and could not thereafter be changed by quitclaim deed given by original owner to plaintiff.

**7. Dedication** ⬤⇒63(2)—Failure to open street after acceptance of dedication for that purpose did not destroy dedication.

Where a city accepted a dedication of land for street purposes, the failure of the city to open the street did not destroy the dedication.

**8. Dedication** ⬤⇒35(1)—Formal adoption of resolution of acceptance of dedication held not necessary to effect acceptance.

Formal acceptance by a city, through its city council or board of commissioners, of land dedicated to it for street purposes *held* not necessary to constitute an acceptance.

**9. Trial** ⬤⇒199—Submission to jury of portions of city charter on issue whether city accepted dedication of land held error; it being judge's province to construe laws.

In proceedings to restrain a city from opening a street over land it claimed was dedicated to it for street purposes, where the issue was whether the city accepted the dedication, quoting to the jury provisions of the city charter pertinent to the issue *held* error, since it was the province of the judge and not the jury to construe laws.

**10. Adverse possession** ⬤⇒8(2)—Adverse possession of land dedicated to city created no right in adverse user.

Where a dedication of land for street purposes was accepted by a municipality, adverse possession could not create in the adverse user a right to the land.

**11. Evidence** ⬤⇒25(2)—Judicial knowledge city of San Antonio covers vast territory, and that many of its streets were not for years prepared for traffic.

The Court of Civil Appeals judicially knows that the city of San Antonio covers a vast territory, and that many of its streets were not for many years cared for or prepared for traffic.

**12. Adverse possession** ⬤⇒60(5)—Citizen holding property subservient to city may not acquire title because he needs it for his own business.

A citizen holding property, such as a street, subservient to the city cannot acquire title to it because he may need it for the uses of his own business.

Appeal from Forty-Fifth District Court, Bexar County; S. G. Tayloe, Judge.

Suit by the San Antonio Academy against the City of San Antonio and others, in which Otto Hasslbauer, executor, and others intervened. From a judgment against them, defendants appeal. Reversed, with directions.

Joseph Ryan, John P. Pfeiffer, and McCollum Burnett, all of San Antonio, for appellants.

Douglas, Carter & Childers, of San Antonio, for appellee.

FLY, C. J. This is an appeal by appellants, consisting of the city of San Antonio and its mayor and commissioners, who were the defendants in the court below, and Otto Hasslbauer, executor, E. G. Le Sturgeon, Ida Shiner, Theodore Krause, R. W. Arhart, Wm. W. Wiseman, G. W. Karcher, T. T. Karcher, E. A. Unger, T. H. Brown, M. E. Spence, and V. Herrera, interveners, from a judgment in favor of appellee perpetually restraining appellants from extending Comal street over a certain strip of land about 55 feet wide and about 200 feet long, back of and adjoining the property on which are situated buildings known as San Antonio Academy, said strip of land being bounded on the north by Hickman street, on the south by North Comal street, on the east by San Antonio Academy property, and on the west by a lot belonging to Hasslbauer and one belonging to San Antonio Academy. To the west of the last two lots named is the right of way of the International & Great Northern Railway Company. Appellee's property fronts on North Flores street, being bounded on the north by Hickman street and on the south by Mrs. Ida Shiner's property.

Appellee alleged that it is a private corporation, W. W. Bondurant being its president; that in 1906 appellee became the owner of original lot 5, range 4, district 3, in the city of San Antonio, being the same property conveyed by George W. Elliott and wife to W. B. Seeley, and also another parcel of land conveyed to W. B. Seeley by John J. Burke and wife, all of the property being in city block No. 1922. It was alleged that appellee had been in peaceable and undisturbed possession of the land since it acquired title to the same in 1906, that appellants city of San Antonio and its officers were tearing down the fences of appellee with the avowed purpose of opening Comal street through to Hickman street.

The uncontroverted facts show that a deed was executed by W. B. Seeley and wife, the vendors of appellee, to the land in controversy, on March 19, 1894, in which it was recited:

"It is understood that the above land donated is given to the city of San Antonio to be used for the purposes of a public street and should the same be used for any other purpose then it shall revert to the heirs of the grantors herein."

On the same date John J. Burke and wife, Jennie B. Burke, sold and dedicated the same land to the city of San Antonio, and with the same provision as that copied from the Seeley deed. In the deed from Seeley and wife to W. W. Bondurant the land donated for Comal street was excepted; it being the land in controversy. Bondurant sold the property to appellee, "save and except from the above description Comal street." In an instrument granting the city of San Antonio permission to construct and maintain sewer pipes, he recognized the "newly established east line of North Comal street extension," and he testified: "In this deed I call for the extension of Comal street." That was on November 19, 1920. In a mechanic's lien given by Bondurant on May 24, 1913, he recognized the "east line of North Comal street" and the "west side of North Comal street." The same recognition of the lines of the property in controversy is made in a deed of trust given by appellee to Dick O. Terrell, dated April 24, 1918. Again the east and west lines of the property in controversy are recognized at Hickman street in a deed of trust by appellee to J. E. Jarratt, on June 1, 1923. At that time it was not claimed that the lot fronting on North Flores street and one in the rear, bordering on the International & Great Northern Railroad right of way, had no intervening property between them, but it was recognized that North Comal street ran between them. This recognition was given in spite of the fact that on April 26, 1922, Bondurant and appellee obtained a quitclaim deed from Seeley and wife to the property in controversy. Bondurant admitted knowledge of the deed to the strip of land 55.6 feet wide and 200 feet long by Seeley to the city, he admitted that he knew the recitals in the deed to him by Seeley, with reference to the extension of Comal street, and was fully aware of the reservation of the street made by him in the deed to appellee, and in other instruments herein named. The quitclaim deed from Seeley and wife was obtained after the city began the opening of Comal street, and after this suit had been brought.

It will be seen that the evidence indubitably establishes the facts that the dedication of the street extension was made by deed, that the deed was duly filed for record, on March 19, 1894, the day of its execution, that Bondurant and appellee always recognized the validity of the dedication until April, 1922, and set up no claim to ownership of the land.

[1-3] The dedication of the land to street purposes was evidenced by a deed duly executed, and was therefore an express dedi-cation. The only condition attached to the dedication was that it was to be used for the purposes of a public street, and for no other purpose. No attempt was ever made to use it for any other purpose, and, if accepted by the city, it became a street. The deed was guarding against misuser and not nonuser. It was not used for years, but an express dedication may become effective without immediate use, if it be an unequivocal grant of land for a public highway, as this grant was. Elliott, Roads and Streets, § 134.

[4] The deed from Seeley and wife to the city of San Antonio was duly filed for record, and was recorded immediately after its execution. The registration of a deed is prima facie evidence of its delivery, and, while the presumption prevails that no one but the vendee had recorded the instrument, the presumption may be removed, but it requires facts to rebut it. Devlin on Real Estate, § 292, with numerous authorities cited in footnote; Holmes v. Coryell, 58 Tex. 680; Newton v. Emerson, 66 Tex. 147, 18 S. W. 348; Hubbard v. Cox, 76 Tex. 242, 13 S. W. 170; Luzenberg v. Loan Ass'n, 9 Tex. Civ. App. 261, 29 S. W. 237; Emory v. Bailey, 111 Tex. 337, 234 S. W. 660, 18 A. L. R. 901. The registration of the deed would evidence not only delivery but acceptance. There is no evidence in the record tending to destroy the presumption of the delivery of the deed by Seeley and its acceptance by the city.

[5, 6] There was an open, unequivocal acceptance of the donation in 1922 before the original owner had made any effort to recall his dedication and before appellee had set up any claim to the parcel of land. If there was no acceptance shown until the street commissioner, on April 21, 1922, sought to open it, still the only persons who had any right or interest in the strip of land, Seeley and wife, had not exercised their privilege of recalling the dedication, and the express dedication, by the act of acceptance, became irrevocable. Up to the time that the petition for injunction was filed on April 21, 1922, appellee had at no time asserted any right to the extension of Comal street, but had, time and again, recognized that it was a street, and even a year after the suit was instituted appellee recognized the dedication and existence of the extension. If the acceptance by the city was not made within a reasonable time, no one could take advantage of that fact, except the person who had executed the deed of dedication. Appellee had never set up any claim to the land. The status of the parties to this suit was fixed at the time the suit was instituted, and could not be changed by a quitclaim deed from Seeley to appellee.

[7] We are of the opinion that the evidence of registration of the deed was presumptive evidence of acceptance of the dedi-

cation, and being once made it forever concluded both the parties. Having accepted the grant, failure to open the street did not destroy the dedication. However, as hereinbefore stated, there was an unequivocal acceptance of the dedication, which had never been questioned by any one, but had been fully recognized and acquiesced in by all parties at all times in April, 1922, and, such acceptance having taken place before any attempt at revocation of the deed of dedication, the dedication became final and irrevocable. With very similar facts, such was the holding of the New York Court of Appeals. Matter of Hunter, 163 N. Y. 542, 57 N. E. 735, 79 Am. St. Rep. 616. In the case cited the evidence showed the first acts of dedication occurred in 1873 and continued until 1889. No work was done on the street by the city of Albany, and no use made of the street until 1898, and Mrs. Hunter prevented work at that time. No attempt had been made in the 25 years that the dedication had existed to revoke it, and the court held:

"Assuming, but not deciding, that the power of revocation existed when the ordinance of May 16, 1898, went into effect, no attempt had then been made to exercise the right. The tender of dedication was still open to acceptance by the city, and, if that ordinance amounted to an acceptance, the land became a public highway."

In 1897 Seeley recognized the existence of Comal street at the back of the lot fronting on North Flores street, and between that lot and the back lot which fronted on Comal street, and ran back to the railroad right of way, in a sworn pleading in a tax suit between him and the city of San Antonio. He thereby confirmed his grant 3 years after it was made. Again, in his deed to W. W. Bondurant in 1906, he confirmed the dedication. He at no time raised any question of acceptance of his grant, but always acted on the assumption that it had been accepted until he executed the quitclaim deed, after this suit had been instituted.

[8] The court instructed the jury that there would be no acceptance of the dedication without action of the city council, or board of commissioners, sitting as such, which is not in consonance with the law on the subject. The jury, after deliberation, propounded the following queries to the court:

"(1) Is it required by law to have a record of a meeting of the city council accepting a piece of property donated to the city for street purposes? (2) Is it required by law for the city council to pass a resolution to abandon a piece of property donated to the City for street purposes? (3) Does the city abandon its rights to a piece of property donated to the city for street purposes by making some one pay for the paving of said street?"

The second and third questions were ignored by the court, because no issue of abandonment was raised in the case, and give no answer to the first question, except to quote two provisions of the city charter, one which remained in force until 1903 and another which was adopted in that year. These quotations failed to answer the question, and were calculated to cause the jury to believe that an acceptance of a dedication for a street could be valid only by a formal adoption of a resolution of acceptance at a regular or special meeting of the commissioners, reduced to writing and recorded. As said by the New York Court of Appeals, in the cited case, Matter of Hunter:

"A resolution formally and in terms accepting the street was unnecessary, for any official act on the part of the common council which treated it as a street and showed an intention to adopt it as one of the public streets of the city would be sufficient."

[9] The city in this instance had recorded the deed, and had attempted to open the street. The jury should not have been called upon to construe laws, that being the province of the judge. Of course, in their attempt to construe the charter they came in conflict with the law as expounded by the Supreme Court.

In the case of Albert v. Railway, 2 Tex. Civ. App. 664, 21 S. W. 779, it was held:

"In this case we are of opinion that there was some evidence which raised the issue as to whether or not this road had been dedicated to the public by the owners of the adjoining land prior to the conveyance by appellant; and we are of opinion that the charge of the court was too restricted, in requiring an acceptance of such dedication to have been evidenced by some affirmative action on the part of the county or city authorities. The charge clearly conveyed to the jury the idea that there could be no public highway without such action upon the part of the commissioners' court or the city council and we think this was error."

This is in line with all the later authorities. There is no provision in the charter requiring formal acceptance or rejection of a donation for a street. As said by Dillon, Municipal Corporations, § 1087:

"When property is dedicated to public use for a street, way or other purpose, the acceptance by the municipality need not be express and appear of record, but may be implied from acts showing the recognition by the municipality of its existence as a public street or highway and the assumption of control over the same as by repairs and improvements, knowingly made and ordered, or knowingly paid for by the local authorities which has the legal power to adopt the street or highway."

And speaking of the time in which an acceptance must be made the same author in section 1089 says:

"In determining whether the right to accept continues, the wants and conveniences of the

public use must be taken into consideration. * * * Use need not follow closely upon the dedication, especially where streets are extended over suburban property. It may be years before the convenience of the public or those who live upon adjacent lots requires that they should formally be taken in charge by the municipal authorities, and in the absence of acts showing a positive intention to revoke, on the part of the owner, the right to accept the dedication will usually continue until the wants and conveniences of the public require the use of the dedicated streets."

[10] Bondurant nor appellee ever held the parcel of land in controversy adversely to the city of San Antonio, but at all times admitted the rights of the city to the land, and always excepted it from any instruments executed by them. The possession of appellee was never adverse to the city, but the right of the city to the land was at all times admitted and acquiesced in. Adverse possession, of course, could give appellee no right to the land, if it had been proven, but it was not.

[11, 12] This court judicially knows that the city of San Antonio covers a vast territory, and that many of its streets were not, for many years, cared for or prepared for traffic, and the facts in this suit indicate that probably until 1922, when an attempt was made to open North Comal street, no real necessity existed for opening it. Under those circumstances appellee was permitted to use the street, the city being led to believe that no one would interfere with its resumption of the use of the street, by the constant assertions of appellee that the city owned the land. The land had been reserved for a street in the deed from Seeley to Bondurant, and from the latter to appellee, and it is not pretended that appellee paid anything for the land, but, as Bondurant swore he needs the street for a playground, and therefore sets up a claim to it. The necessities of men who have bought on Comal street are probably of higher value than the right to a playground. The opening of the street was shown to be a necessity to adjacent property owners, and when that necessity was made known to the city it attempted to open the street that had been donated to it by the owner. It has not forfeited its right to open the street. We cannot accede to the proposition that a citizen holding property subservient to the city can acquire title to property because he may need it for the uses of his business. The evidence fails to show any right that appellee equitably or legally has to the land.

The judgment is reversed, and it is the order of this court that the injunction granted by the lower court be set aside and dissolved, and that appellee take nothing by its suit and pay all costs in this behalf expended.