## CALLAWAY v. CALLAWAY. (No. 12218.)

Court of Civil Appeals of Texas. Fort Worth. Jan. 4, 1930.

Taylor, Muse & Taylor, of Wichita Falls, for appellant.

Smoot & Smoot, of Wichita Falls, for appellee.

BUCK, J. On April 4, 1925, T. T. Callaway and wife, Eliza J. Callaway, of Clay county, Tex., executed deeds to their three children, J. S. or Sidney Callaway, Oswald E. Callaway, and a daughter, Mrs. Moore. Two hundred acres were deeded each to Sidney Callaway and to Mrs. Moore, and 300 acres, including the home, were deeded to Oswald E. Callaway. Mrs. Eliza J. Callaway died March 19, 1928, at the age of 75 years. Upon the death of Mrs. Eliza J. Callaway, according to the testimony of Oswald E. Callaway, his father invited him to come from his then home in Wichita Falls, and take possession of the land deeded to him and to take care of his father. He replied that he could not come immediately, but would do so as soon as school closed at Wichita Falls and he disposed of his home there. Later he did sell his home, and at the close of school he shipped his household goods down to Henrietta, 6 miles from which was the Callaway place, and went out to the home to take possession. A controversy arose between him and his father, T. T. Callaway, as to his right to take possession of the homestead. T. T. Callaway filed a suit seeking to enjoin Oswald E. Callaway from attempting to take possession of the homestead, and later filed a suit, the purpose of which was to set aside the deed from Oswald E. Callaway's father and mother, and to revest the title thereto in T. T. Callaway. The deed from T. T. Callaway and his wife to Oswald E. Callaway mentioned as a consideration $10, which it is agreed was never paid nor requested, and the love and affection that the grantors bore their son. It conveyed title to the 300 acres to Oswald E. Callaway for his lifetime only, and the remainder to his then living children and their heirs and assigns forever.

In this suit, T. T. Callaway, plaintiff, alleged that he and his wife executed what is known as a joint will, leaving the survivor the remainder of said property of which either might die seized and possessed upon the death of the other, and giving to the survivor the complete control, management, and disposition of said property; that for some six or seven years prior to the death of Eliza J. Callaway she was in poor health, and that her condition of health was such as to af-

fect her mental capacity, and that she was mentally incapacitated, aged, and infirm, and was, in fact, over 75 years of age, and had passed into her second childhood; that she continuously nagged, harrassed, and troubled the plaintiff, demanding that he execute a deed to the land, some 800 acres, owned as a part of the community estate of T. T. Callaway and his wife, to their children, and especially did she demand that the plaintiff, along with her, execute a deed to the 300 acres described to the defendant, O. E. Callaway, advising plaintiff that O. E. Callaway had a large family and that he deserved the home place. Plaintiff further alleged that he and his wife were devoted to each other, and had been married for many years, and that he had respect for his wife's wishes even though at the time her mental capacity was such that she did not understand the force and effect of a deed, nor did she understand the force and effect of an oath, and that solely and alone to humor the plaintiff's deceased wife, mother of the defendant, he told her that he would have a deed prepared in accordance with her wishes; that at the time defendant, O. E. Callaway, did not know of such arrangement, and did not understand that such an arrangement was to be made, and that, without any consideration whatever, plaintiff caused said deed to be drawn and prepared, conveying to O. E. Callaway 300 acres, a part of the home place. He further alleged that, before said deed was placed of record, it was changed in a material respect as to the land conveyed, but that it did convey the 300 acres heretofore mentioned, leaving T. T. Callaway in possession of 100 acres of the original 800-acre tract.

The defendant answered plaintiff's petition by a general demurrer, certain special demurrers, and a general denial, and specially pleaded that plaintiff had induced him, at a loss of $500, to sell his home in Wichita Falls for some $500 less than the actual market value thereof, and to give up and leave his regular employment and trade as a carpenter, at which he was receiving $10 per day, and to come to the old home place to live in the same house with plaintiff and to take possession of the 300 acres theretofore conveyed. The uncontradicted testimony shows that, at the time of the conveyance from plaintiff and his wife to O. E. Callaway of the land described in the deed, defendant was not present, and that he did not know anything with reference to said conveyance until some time later.

The cause was submitted to a jury upon two special issues, as follows, including the answers to the same:

"Special issue No. 1: Did the plaintiff, T. T. Callaway, execute the deed to the land in controversy by reason of duress exerted by his wife, Mrs. Eliza Callaway? Answer: Yes.

"Special issue No. 2: If you have answered special issue No. 1 'No' you need not answer this, but if you have answered the same 'Yes', then you will answer the following issue:

"After the removal of the duress exerted by Mrs. Eliza Callaway (if any duress was exerted by her) did the plaintiff T. T. Callaway ratify the deed to the defendant O. E. Callaway? Answer: Yes."

Upon this verdict the court rendered judgment for defendant, with writ of possession, and that the cloud to defendant's title be removed and that defendant recover all costs of court. From this judgment the plaintiff has appealed.

### Opinion.

Assignment of error No. 2 complains of the action of the trial court in excluding certain testimony of witnesses "Blane" (?) and Callaway, wherein they testified that the deed in question was executed with the understanding at the time upon the part of both grantors that it was not to take effect until the death of both grantors, and "is made manifest by plaintiff's bill of exception No. 2." In the index, there is found only one bill of exceptions, but there is in the transcript a second bill of exceptions which complains of the action of the trial court, "while the witnesses M. D. Bonds, Ethel Allman and T. T. Callaway were upon the stand testifying in behalf of plaintiff, the following proceedings were had," etc. We do not understand how three witnesses can be on the stand testifying at the same time, but we presume that this bill of exceptions complains of the alleged error urged in assignment No. 2. The question asked the witness, or witnesses, by counsel for plaintiff, was:

"Now, please tell the jury whether or not you were ever present in the Callaway home at or about the months of April, May, June or July, 1925, or at any time subsequent to that, before the death of Mrs. Callaway, and know, and which you heard of any conversation between any person [persons] concerning the question of this deed? Answer: Yes.

"State as nearly as you can what that conversation was."

Upon objection of counsel for defendant that this was an attempt upon the part of the plaintiff to vary the contract, and to vary the terms of a written instrument, the court overruled the objection. Then witness, or witnesses, answered:

"Yes, I heard a conversation in which Mrs. Callaway said that they had given O. E. Callaway 300 acres of land but that the deed was not to have any effect, nor to be delivered until the death of both herself and husband. That which ever one died first, the other should have this property until his or her death, then it was to go to O. E. Callaway for life."

Upon the conclusion of this testimony, the defendant moved the court to strike all the testimony relating to this conversation, and the court sustained the motion, and the testimony was excluded.

We think the evidence in this case, and especially the testimony of plaintiff in error, or the plaintiff in the trial court, leads to the inevitable conclusion that he executed the deed upon the consideration of love and affection for his son and that he had the deed prepared by a Mr. Conn at the courthouse, and that Mr. T. E. Slagle, a notary public, went out to the Callaway home and took the acknowledgment of the grantors to it.

Plaintiff in error, hereinafter called appellant, testified: "At the time I executed this deed I-brought it in and filed it for record several days later. * * * I intended to place that deed of record; that was our intention. My intention was just like my wife's. The intention of both of us was to sign that deed, acknowledge it before Mr. Slagle and then place it of record. * * * My wife and I executed this deed about the 14th day of April, 1925, and placed it or had it placed of record, deeding this 300 acres of land to O. E. Callaway, my son, in consideration of love and affection that I had for him. * * *"

He further testified: "You ask, as a matter of fact, Mr. Callaway, from April 4, 1925, when this deed was made according to the face of it, you have held out to the world and all, and anyone, and everyone, that this was the property of O. E. Callaway, and that you and your wife had deeded it to him and intended it to be his, and I answer yes, under certain conditions. Those conditions were that it was deeded to him for his lifetime, but at his death it went to the heirs of his body. We had to do that in order to protect his children."

Appellant further testified that it was his intention and his wife's intention in good faith to deed this land to O. E. Callaway for O. E. Callaway's natural life, and then to his children; that such was the personal intention of the witness grantor; that several months after his wife's death witness was appointed administrator of his wife's estate, and that he filed a sworn inventory in the county court of Clay county; that in such inventory he did not render this 300 acres, stating that it was not a part of the community estate; that, since the execution and placing of record of the deeds to his three children, he had told no one that he did not execute the deed in good faith and with the intention of conveying the land to his son; that he had rendered this land since his wife's death in the name of O. E. Callaway, and had sworn that it was not part of the estate of the witness. The record is replete with such evidence, while there are

some statements of the witness that he did not execute the deed voluntarily, but was constrained to do so by the fear that his wife would kill herself if he did not so execute it, and that he did not remember that he had put it of record. But we think the testimony conclusively shows that he did execute the deed in consideration of his affection for his son, and that he did place the same upon record in Clay county, and that he told his son O. E. Callaway, and other persons, that he and his deceased wife had made a deed to this 300 acres to O. E. Callaway during his life and then to the heirs of his body.

The authorities lay down the rule that the placing of a deed by the grantor of public record is a constructive delivery of the land therein conveyed. 18 Corpus Juris, p. 419, § 497, says: "That a deed has been duly executed, acknowledged and recorded is prima facie evidence of its delivery and acceptance, where a beneficial interest is conferred. And the delivery of a deed for record, by one who has executed and acknowledged it, with unqualified instructions to record it, will raise the presumption in the absence of any rebutting circumstance that the grantor intends to part with his title. Again the assent of the grantor will be presumed to the delivery of a deed for record unless a dissent is shown. So possession of the property conveyed under a recorded deed, valid on its face, affords presumptive evidence of delivery."

See Devlin on Deeds, vol. 1 (1887) § 274, which reads as follows: "If a grantor delivers his deed to the officer taking the acknowledgment, with unqualified instructions to deliver it to the grantee at any time he may call for it, and the grantee accepts the title to the land conveyed, the delivery to the officer is sufficient to vest the title to the land in the grantee, although the latter for the sake of convenience may allow the officer to retain possession of the deed."

Mr. T. E. Slagle, who took the acknowledgment to the deed, testified that he went out to the Callaway home and talked with Mrs. Callaway about the deed, and about other matters, and that she seemed sane and in her right mind, and that his remembrance was that he took the deed back to the bank, and that Mr. Callaway called for it later.

Durley B. Davis, the county clerk, testified that the law requires that a proper record be kept of all persons who bring instruments to be recorded, that he had a book in which he kept this information, and that during the term of his predecessor the entry was made in that book of the deed in question, and notation was given that the deed was filed by T. T. Callaway. In Ford v. Boone, 32 Tex. Civ. App. 550, 75 S. W. 353, 354, writ of error denied in 97 Tex. 632, 77 S. W. xv, a

father executed and recorded a deed to certain lands in consideration of $1 and love and affection to his children, and then retained the original deed. The court said: "Immediately after the execution of these deeds, and on the same day, the defendant took them both to the office of the county clerk and had them recorded, and after their record he got them from the clerk and kept them in his possession until they were produced by him at the trial of the case in the court below. The evidence was sufficient to show a delivery of the deed, both as to intent so to do and the record and subsequent custody thereof."

In Belgarde v. Carter, 146 S. W. 964, 966, by Judge Fly of the San Antonio Court of Civil Appeals, it is said: "The registration of a deed places it beyond recall upon the part of a grantor; and such act will usually be held to be equivalent to delivery to the grantee."

In Brown v. Rodgers, 248 S. W. 750, Judge Boyce, of the Amarillo Court of Civil Appeals, said: "If it had been shown that Crowley (grantor) either mailed the deed himself or left it with the notary or some one else for mailing, or delivered it to some private person for transmission to the clerk for recording, such acts would unquestionably, we think, have warranted a finding of delivery."

That love and affection is an adequate consideration is well established by numerous authorities.

We find no error in the ruling of the trial court, and the assignment is overruled.

We have carefully examined appellant's other assignments, and overrule them.

The judgment of the trial court is therefore affirmed.