908

COHEN et al. v. COHEN et al.
No. 2506.

Court of Civil Appeals of Texas. Waco.
May 6, 1943.

Rehearing Denied June 3, 1943.

John B. McNamara, Tom M. Hamilton, J. A. Kibler, and H. S. Beard, all of Waco, for appellants.

Fitzpatrick & Dunnam, of Waco, for appellees.

TIREY, Justice.

W. H. Cohen, J. L. Cohen and Mrs. Wilhelmina Redd, joined by her husband, brought this suit against G. H. Cohen, Mrs. Carrie Pearson and her husband, and Mrs. Annie Cowsert and her husband, to cancel four separate warranty deeds executed by Mrs. Henrietta Cohen, namely: One dated September 8, 1927, to Mrs. Redd and acknowledged December 3, 1936; one dated December 3, 1936, to Mrs. Pearson and acknowledged on that date; one dated February 14, 1940, to G. H. Cohen and acknowledged on that date; and one dated February 14, 1940, to Mrs. Cowsert and acknowledged on that date. Each of said deeds purported to convey to each of the grantees the property therein described. Plaintiffs also sought partition and distribution of all the real estate described in said deeds and of certain personal property.

On the verdict of the jury favorable to plaintiffs the court canceled each of the deeds and removed the cloud cast on the title and decreed that the sons and daughters aforesaid were the sole and only heirs at law of Mrs. Henrietta Cohen, deceased, and that said sons and daughters were entitled to a partition and division of the property in equal portions and appointed a receiver to sell the property and fixed his bond, and the receiver duly qualified.

At the conclusion of the evidence defendants seasonably filed motion for instructed verdict, which was refused, and thereafter motion for new trial, which was overruled, and the action of the court on these motions is assigned as error.

The judgment is assailed substantially on the ground that the evidence is without dispute that the warranty deeds from Mrs. Cohen to defendants were delivered by her to said defendants, and that there was no showing of accident, fraud or mistake in their delivery, or that they were delivered for some special purpose, and that the deeds operated as conveyances at the time of their delivery and recording and by reason thereof the court should have instructed a verdict in favor of defendants.

. The point raised requires a comprehensive statement. It is without dispute that W. H. Cohen, Mrs. Redd, J. H. Cohen, G. H. Cohen, Mrs. Cowsert and Mrs. Pearson were the sole and only heirs at law of Henrietta Cohen, deceased; that Mrs. Co-

hen died intestate in McLennan County on July 19, 1941, and that no administration is now pending on her estate and none is necessary; that each of the four deeds was brought to the County Clerk's office by Mrs. Cowsert and deposited with the reception clerk on June 28, 1941; that the filing fee was paid by her and, according to her instructions, after the deeds were recorded they were mailed to her at her address 1925 South 11th Street, Waco, Texas. The court permitted plaintiffs to place in evidence a part of an instrument dated February 14, 1940, signed "H. Cohen," the part introduced being as follows: "Filed 7 day of Aug 1941 Floyd Mitchell, Clerk, County Court, McLennan County, Texas, by C. L. Middlebrook, Deputy.

"The State of Texas
"County of McLennan

"Know all men by these presents:

"That I, Mrs. H. Cohen, being of sound and disposing mind and memory, and desiring to dispose of my worldly affairs while I have strength and capacity so to do, do make and publish this my last will and testament, hereby revoking all other wills heretofore by me made.

"I desire and direct that my body be buried in a Christianlike manner suitable to my circumstances and condition in life, in Rosemound Cemetery by my son Henry Cohen.

"I have by my several conveyances conveyed to certain of my children properties that I desire them to have, and I have reserved certain stipulations in some of said deeds which are to be complied with, and when said stipulations as set forth in said deeds have been complied with, then said full fee simple title shall vest in the grantee and his heirs, and I here now, in this my last will and testament, confirm such deeds, some of which are to be delivered after my death."

Mrs. Redd, among other things, testified to a telephone conversation she had with Mrs. Cowsert just before June 28, 1941. The pertinent part of this conversation was as follows: "Well, she called me up and she said she was over there and I said, 'Well is Mama back home?' and she said, 'No, she is at Carrie's, but I am going to take her to my house some time next week,' and she says, 'I came over here to water the flowers and to get some bed linen and some gowns,' and she says, 'I was going through Mama's deeds and I was looking through some

deeds,' and says, 'I was wondering if Mama had given you a deed,' and I said, 'Well, what do you mean, a deed,' and she said, 'Has Mama· ever given you a deed to any of her property?' and I said, 'You know Mama would never give anyone a deed to her property as long as she is living,' and she said, 'I just thought maybe you had one,' and I asked her when Mama was going home and she said she was going to take her to her house because she wasn't satisfied at Mrs. Pearson's * * *." Mrs. Redd further testified substantially to the effect that the deed from her mother to her was never delivered to her by her mother and that she never saw the deed before her mother's death and did not personally learn that the deed had been filed for record until the day after her mother was buried. Mrs. Cowsert told her she had the deed for her and had filed it of record and that she owed her a $.75 filing fee. Mrs. Cowsert testified, in part:

"Q. Did you ever go down to your mother's home while she was at Mrs. Pearson's to get gowns and water the yard and see about things? A. About ten days before she died I did.

"Q. Uh huh. A. Some sheets and gowns.

"Q. Uh huh. You are the one who physically carried these four deeds, exhibits one, two, three and four, down to the County Clerk's office for recording, aren't you? A. I am.

"Q. And directed that all of them be returned to you? A. Yes sir."

Mrs. Cowsert rendered the property involved in this suit for taxes as shown by rendition sheets dated January 16, 1941, as the property of Mrs. H. Cohen. · She testified that the reason she rendered it in her mother's name was "because the deeds had never been put on record, had never been filed for record, and I was asked to render the property; Mother wasn't able to go down there." The oath attached to the rendition sheets, which was signed and sworn to by Mrs. Cowsert, was substantially: "I, Mrs. H. L. Cowsert do solemnly swear (or affirm) that this inventory rendered by me contains a full, true and complete list of all taxable property owned or held by me in my name for mother in this county, and personal property not in this county subject to taxation in this county by the laws of this State, on the first day of January, A.D. 1941, and that I have true

answers made to all questions propounded to me touching on same, so help me God."

Mrs. George H. Cohen, wife of one of the defendants, was permitted to testify, over objection of plaintiffs (see Mitchell v. Deane, Tex.Com.App., 10 S.W.2d 717), to certain conversations and transactions with Mrs. Henrietta Cohen and Mrs. Cowsert, substantially as follows: That in December, 1940, she and her husband came from Houston to Waco and were at the home of Mrs. Cowsert, and Mrs. Cohen was there; that Mrs. Cohen asked George if he was coming back for Christmas and he said that he was not; that Mrs. Cohen said, " 'Well, I have a little Christmas present for you,' and then she gave him his deed and she gave Mrs. Cowsert her deed at the same time and then she said that she didn't want any of the rest of them to know it because that was our own private affair"; that her husband took the deed home with him to Houston; that Mr. and Mrs. Cowsert came to Houston in January, 1941, and that her husband asked them to bring the deed back and have it recorded here; that he had found that he couldn't put it on record at Houston. Mrs. Cohen further testified that she and her husband came up to Waco the latter part of June (1941) and Mrs. Cohen was sick; that while they were here one afternoon Mrs. Cowsert had been to town and paid some bills for Mrs. Cohen and herself, and after Mrs. Cowsert had adjusted the bills paid for her mother and herself, the mother told George that he owed "Annie $.75 for putting this deed on record." She further testified that her husband did not try to collect any of the rents back in 1940.

M. Hoffman, a tenant of Mrs. Cohen, testified substantially to the effect that he had a conversation with Mrs. Cohen in his yard a few months before she died and Mrs. Cohen told him that she gave the property which he rented to Mrs. Cowsert. He testified to a second conversation he had with Mrs. Cohen during her last illness, in part, as follows:

"Before she died she told us that Mrs. Cowsert was going to be our landlady and she would treat us just as good as she did; that is all she said. * * * She said that we should pay our rent to Mrs. Cowsert. * * *

"Q. And do you know how long after that conversation it was before she passed away? A. Well, she passed away soon, I guess about a couple of days, wasn't it? * * *

"Q. Did she tell you that she gave anybody else any property? A. She told me she gave Carrie the farm and Mrs. Cowsert the store and the house.

"Q. * * * She didn't say anything about the other children? A. She said George would get the home."

Mrs. Hoffman testified to the conversation she had with Mrs. Cohen the last week before she died: "A. Mrs. Cohen asked for her teeth, and Annie gave her the teeth and she talked to us and she says, 'Annie will be your landlady,' and I says, 'No, you are going to stay yet,' and she says, 'No, I am ready to go; she will be your landlady; she will be good to you,' and that is all I know."

The court submitted two issues. No. 1 was: "Do you find from a preponderance of the evidence, if any, that Mrs. Henrietta Cohen, during her lifetime, did not deliver the deeds in question to Mrs. Annie Cowsert, Mrs. Carrie Pearson and George H. Cohen, with intention of passing title to the property therein described? Answer 'She did deliver said deeds' or 'She did not deliver said deeds.' If you have answered Special Issue No. 1 'she did deliver said deeds,' and in that event only, you will answer Special Issue No. 2," to which the jury in their verdict answered "She did not deliver deeds."

▆ Under the fact situation here presented the sole question is: Was the delivery of the deeds to the defendants a fact issue tendered by the evidence? We think so. The rule in Texas is: "What constitutes the delivery of a deed is a question of law, but whether there was in fact a delivery of the deed under consideration is a question of fact, to be determined by the jury." Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, page 536, point 3. See also Gilbert v. McSpadden, Tex.Civ.App., 91 S.W.2d 889, points 1–3. In this connection, the instrument executed by Mrs. Cohen under date of February 14, 1940, provided in part: "I have by my several conveyances conveyed to certain of my children properties that I desire them to have, and I have reserved certain stipulations which are to be complied with, and when said stipulations as set forth in said deeds have been complied with, then said full fee simple title shall vest in the gran-

tee and his heirs, and I here now, in this my last will and testament, confirm such deeds, some of which are to be delivered after my death." Moreover, the deed from Mrs. Cohen to her daughter, Mrs. Pearson, provided in part: " * * * and the further consideration that the said Carrie. Pearson will feed, clothe and take care of me during the remainder of my life, and at my death pay all expenses of my last illness and funeral expenses, it being my intention that my death shall constitute a delivery of the title to the hereinafter described land, and this deed, though in my possession, or elsewhere, if in existence, shall be prima-facie evidence that the said Carrie Pearson has carried out and performed to my satisfaction the obligation herein imposed upon her, up to the time of my death." The deed from Mrs. Cohen to her son, George, provided in part: " * * * and further that he will pay one-third of my funeral expenses and one-third of the cost of my monument to be placed on my grave." The deed from Mrs. Cohen to Mrs. Cowsert provided in part: "With further consideration that she pay one-third of my funeral expenses and one-third of the cost of a monument to be placed on my grave." It is true that each of the deeds of the defendants had been filed for record, and it is likewise true that Mrs. George Cohen testified positively to the delivery of the deed to her husband as well as the delivery of the deed to Mrs. Cowsert by Mrs. Cohen, the grantor, and while we think the trial court was correct in permitting her to testify to such transactions, we think that Mrs. George Cohen was nevertheless an interested witness and by reason thereof her credibility as such and the weight to be given her testimony were questions for the jury's determination. Nor can we say as a matter of law that there are no circumstances in the evidence tending to discredit or impeach the testimony given by Mrs. George Cohen. See Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, page 775, points 1–4; Dunlap v. Wright, Tex. Civ.App., 280 S.W. 276, page 279, point 6; Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Tex.Civ.App., 96 S.W.2d 788, page 790, points 2–3.

Since such fact situation was presented by the evidence, the rule announced in City of San Antonio v. San Antonio Academy, Tex.Civ.App., 259 S.W. 995; West Texas Construction Co. v. Arnold, Tex.

Civ.App., 74 S.W.2d 430; Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151; Belgarde v. Carter, Tex.Civ.App., 146 S.W. 964, writ refused, and McClendon v. Brockett, 32 Tex.Civ.App. 150, 73 S.W. 854, writ refused, does not apply.

 Since appellants were not entitled to an instructed verdict, then "it is settled that only evidence which tends to support a judgment or finding of fact may be considered, and all evidence favorable to the opposite contention should be disregarded." 3 Tex.Jur. 1090, sec. 765. Our view is that the evidence adduced required the court to submit to the jury for determination the fact question as to whether there was in fact a delivery of the deeds. It necessarily follows that under this view the judgment of the trial court must be affirmed.

The judgment of the trial court is affirmed.